OPINION OF THE COURT
Chief Judge Wachtler.
At issue in these cross appeals is the power of the Executive to implement a plan to facilitate the registration of potential voters *187 by making registration forms and assistance available at State agencies.
I.
On July 9,1984, Governor Cuomo issued Executive Order No. 43 (9 NYCRR 4.43), which established a program of voter registration and a "Voter Registration Task Force”. The registration program is to be implemented through State agencies having contact with the public, which are to make mail registration forms available and provide, through their staffs, assistance in filling out the forms. Staff assistants are mandated to observe a position of "strict neutrality with respect to a person’s party enrollment”. The Voter Registration Task Force, composed of the heads of various State agencies, including the Executive Director of the State Board of Elections, or their representatives, is directed to meet quarterly and is charged, in essence, with overseeing the implementation of the programs.
Shortly after the executive order was issued, plaintiff commenced this action for declaratory and injunctive relief. Special Term granted plaintiff’s motion for a preliminary injunction (123 Misc 2d 885), but the Appellate Division reversed, on the law, denied the motion (103 AD2d 244) and granted leave to appeal to our court (104 AD2d 673). We affirmed (63 NY2d 96).
A trial on the merits followed, at which the sole witness was Henrik N. Dullea, Director of State Operations and Chairman of the Voter Registration Task Force. Dullea testified that the registration program had been implemented in "an array of agencies which have a fairly high volume of pedestrian traffic”, in which voter registration forms had been made available and signs had been posted reminding the public that registration was a precondition of voting and describing the registration form. Dullea characterized these efforts as "a passive program of making that material available”.
Persons requesting forms may fill them out at the agency and leave them in a receptacle for transmittal to or pickup by the local Board of Elections, or they may mail the forms directly to the Board. The Boards are given the option of providing locks for the receptacles; if they do not, the agency will supply a lock for each receptacle.
Dullea testified further that options for collecting the completed forms included pickup by a Board representative at each agency or a central location in the county, or delivery to the Board by the agency. However, he also read from a memorandum he had sent to the agency coordinators which provided: "There should be *188 no need for you or any other State employee to handle completed registration forms. Rather, each citizen should place the completed form in the receptacle, which should be placed in a secure location each evening. You should place a padlock on the receptacle, removing it only to give the forms to a representative of your County Board of Elections. In fact, New York State’s Board of Elections will assist you in making arrangements with your county board for picking up the registration forms.”
The memorandum also contained the following warning: "very important: The Governor specified in his Executive Order that employees involved in this project must 'maintain a position of strict neutrality with respect to a person’s party enrollment.’ It is crucial that you explain to all participating employees that they may not in any way try to influence registrants’ party enrollment.”
Following the testimony, Trial Term declared Executive Order No. 43 "unlawful, unconstitutional and void” and enjoined defendants from implementing it (125 Misc 2d 968). Defendants appealed, and after it vacated their stay pursuant to CPLR 5519 (c) (105 AD2d 451), the Appellate Division reversed, on the law, declared Executive Order No. 43 constitutional and enjoined defendants and the Voter Registration Task Force from providing receptacles for completed voter registration forms at those locations where the forms are made available (104 AD2d 188).
Plaintiff, the then Republican State Chairman, predicated this appeal on a constitutional question (CPLR 5601 [b] [1]), contending, in essence, that Executive Order No. 43 violates the doctrine of separation of powers and article II, § 8 of our Constitution. Defendants cross-appealed from so much of the Appellate Division’s order as enjoined them from providing receptacles for completed voter registration forms at those agency locations where the forms are made available,[1] contending the injunction exceeded the scope of the court’s equitable powers. Finding none of these arguments persuasive, we affirm.
*189 II.
Plaintiffs first contention is that, in essence, Executive Order No. 43 violates the constitutional principle of separation of powers because it infringes upon the mandate that the Legislature “provide by law for a system or systems of registration” (NY Const, art II, § 6). The doctrine of separation of powers is implied by the separate grants of power to each of the coordinate branches of government. Article III, § 1 of our Constitution provides: "The legislative power of this state shall be vested in the senate and assembly”, and article IV, § 1 provides in pertinent part that "[t]he executive power shall be vested in the governor”.
But we have recognized that some overlap between the three separate branches does not violate the constitutional principle of separation of powers (e.g., Matter of County of Oneida v Berle, 49 NY2d 515, 523; Matter of Richardson, 247 NY 401, 413). As we noted in People v Tremaine (252 NY 27, 39), “common sense and the necessities of government do not require or permit a captious, doctrinaire and inelastic classification of governmental functions.” In Matter of Rosenthal v McGoldrick (280 NY 11, 14), for example, we sustained legislation conferring upon judicial officers the plenary power to fix salaries of clerks and other employees, noting that "[t]he rule that the judiciary may not be charged with administrative functions does not apply when such functions are 'reasonably incidental to the performance of judicial duties’ ”.
Plaintiffs reliance on Rapp v Carey (44 NY2d 157) is misplaced. There, we recognized that "in this State the executive has the power to enforce legislation and is accorded great flexibility in determining the methods of enforcement” (id., at p 163; see also, Under 21 v City of New York, 65 NY2d 344, 356).[2] It is only when the Executive acts inconsistently with the Legislature, or usurps its prerogatives, that the doctrine of separation is violated. Thus, in Rapp v Carey (supra), we held that an executive order requiring financial disclosure by certain State employees and prohibiting certain political and outside business activity did not implement existing legislation regulating conflicts of interest, but reached far beyond such legislation and thus assumed the power of the Legislature to set State policy.
*190 But the case before us is quite different. The Legislature has declared its policy that "the state board of elections shall have the power and duty * * * to encourage the broadest possible voter participation in elections” (Election Law § 3-102 [13]). Registration application forms, it has further declared, are to be given by a County Board of Elections to "any person” requesting them; each County Board "shall also cause such application forms to be as widely and freely distributed as possible” (Election Law § 5-210 [2]). That the program was intended to further this policy was established at trial by the uncontradicted testimony of Dullea. Unlike the order in Rapp v Carey (supra, at p 165), it can thus hardly be said that Executive Order No. 43 represents a "nullification” of legislative action. The dissent suggests that the foregoing sections must be read literally to limit the effectuation of these policies by only the State and County Boards of Election, without any assistance, no matter how consistent with the articulated policy, whether such Boards desire such assistance or not. Yet, inexplicably, the dissent concludes that this very language, which it would apply so literally against the State, would not apply to private actors.
Moreover, in this case there was cooperation by both the State and local Boards of Election with the program implemented by Executive Order No. 43. Indeed, the State Board of Elections is itself an executive agency (Election Law § 3-100 [1]). Most important, as discussed more fully below, the program is not registering anyone to vote in contravention of any statute or constitutional delegation of authority, but is merely facilitating the distribution and filling out of forms, which is only the first step toward registration.
Our decision in no way conflicts with Matter of Prospect v Cohalan (65 NY2d 867, motion for clarification and cross motion for rearg denied 65 NY2d 1026). There we held that a county executive could not formulate disaster preparedness policy, which function was specifically delegated by statute to the legislative branch of the county government. Here, in contrast, the Legislature has articulated the policy, and the State and local Boards of Election are merely charged with its implementation. The Executive is not usurping a policy function of the Legislature at all in this case, but is merely implementing its policy in a manner which in no way treads on its prerogatives.
Finally, that proposed legislation similar to Executive Order No. 43 was not passed does not indicate legislative disapproval of the programs contemplated by the order. Legislative inaction, be *191 cause of its inherent ambiguity, "affords the most dubious foundation for drawing positive inferences” (United States v Price, 361 US 304, 310-311; see also, Brooklyn Union Gas Co. v State Human Rights Appeal Bd., 41 NY2d 84, 90, rearg denied 42 NY2d 824, remittitur amended 44 NY2d 789 [distinguishing situation where inactivity can imply approval of long-standing construction of a statute, not present here]).
III.
Plaintiff’s contention that Executive Order No. 43 violates article II, § 8 of our Constitution[3] is also unavailing. That section by its terms applies only to "laws creating, regulating or affecting boards or officers charged with the duty of registering voters, or of distributing ballots to voters, or of receiving, recording or counting votes at elections,” and requires bipartisan representation on such bodies. Although the program and Task Force created by Executive Order No. 43 clearly do not afford such bipartisan representation, that requirement is inapplicable because Executive Order No. 43 is not a law and because the personnel who implement it do not register voters, distribute ballots or receive, record or count votes at elections.
A law may be enacted only by a legislative body, which the executive clearly is not (see, Schumer v Caplin, 241 NY 346, 351-352). Rather, his Executive Order No. 43 is an entirely proper order "seemingly cast in a rule-making mold, but * * * repetitive of existing legislation as to standards and implementing] the enforcement of those standards by voluntary arrangements, directions for co-ordination, or the interposition of mediatory bodies” (Rapp v Carey, 44 NY2d, at p 163, supra).
No claim is made that the implementation of Executive Order No. 43 distributes ballots to voters or receives, records or counts votes at elections. However, plaintiff suggests that the program does register voters, and that Executive Order No. 43 thus violates the constitutional mandate in that respect. We hold, at least when implemented in conjunction with the injunction against providing locked receptacles, and thus constituting only a means of distributing and assisting in the completion of voter registration forms, that it does not.
It matters not whether registration is complete at the time the *192 application form, if timely mailed, is received by the local Board of Elections, as plaintiff claims (Election Law § 5-210 [3]),[4] or, as defendants contend, after the application has been reviewed by a bipartisan team of Board employees (Election Law § 5-210 [6] [a]).[5] The mere distribution of registration forms and rendition of assistance in completing them does not approach either critical event and thus does not implicate the constitutional requirement of bipartisan representation. Although a "but for” analysis arguably would require a contrary result, because the critical stage could not be reached unless someone supplied the forms and helped registrants fill them out where necessary, such an interpretation would, as a practical matter, preclude all private voter registration drives and thus be completely contrary to the expressed legislative policy of encouraging as widespread voter registration as possible.
IV.
We sustain the Appellate Division’s affirmance of the injunction against the provision of receptacles for completed registration forms in the offices that distribute the forms. The presence of such forms in boxes which in some cases are in the control of agency employees too closely approaches the critical stage of delivery to the local Board of Elections, thus, rendering the agency, for all intents and purposes, a "branch office” of the Board. While it appears that there is a preference in the program for local Boards to have sole custody of the keys to the boxes and for their personnel to retrieve the boxes and empty them at Board offices, it was conceded that this preference was often not followed.
The potential for mischief when the key to the box, and the transportation of its contents to Board offices, are the responsibility of agency personnel, is obvious. Less obvious, but in our view also infused with both the perception of and potential for abuse, is *193 the presence of the locked receptacles even in other circumstances. We believe that any impact on the program of requiring registrants to mail in their completed forms is outweighed by the elimination of the potential for abuse when such forms are in the custody of the Postal Service. Accordingly, we conclude that so much of the injunction as applied to the use of locked receptacles was, under the circumstances, properly issued.

. The cross appeal should be dismissed. The order of the Appellate Division, though termed by it one of reversal, is in effect a modification by which defendants are not aggrieved because it struck portions of the injunction against them and declared the executive order constitutional. Furthermore, no substantial constitutional question is directly involved on the cross appeal, which pertains only to the limited injunction against receptacles for completed registration forms. Because, however, we deem it appropriate to dispose of all the issues in this case, we grant defendants’ motion, made at oral argument, for leave to cross-appeal.

. According to the dissent, the constitutionality of Executive Order No. 43 "is wholly contingent upon whether there exists a specifically conferred legislative authorization for the gubernatorial act” (dissenting opn, at p 193; emphasis in original). Relying on Rapp v Carey (44 NY2d 157), among other authorities, in support of this proposition, the dissenter ignores this language in that decision.

. NY Constitution, article II, § 8, provides in pertinent part: "All laws creating, regulating or affecting boards or officers charged with the duty of registering voters * * * shall secure equal representation of the two political parties which, at the general election next preceding that for which such boards or officers are to serve, cast the highest and next highest number of votes.”

. Election Law § 5-210 (3) provides in pertinent part: "Completed application forms, when received by any county board of elections or showing a dated cancellation mark of the United States Postal Service not later than the thirtieth day before the next ensuing primary, general or special election, and received no later than the twenty-fifth day before such election, shall entitle the applicant to vote in such election, if he is otherwise qualified.”

. Election Law § 5-210 (6) (a) provides in pertinent part: "Upon its receipt by the county board of elections, each application form shall be reviewed and examined by at least two members or employees of such board authorized by the board to receive registrations. Such two members or employees shall represent the two major political parties. If the application shall contain substantially all the required information indicating that the applicant is legally qualified to register and/or enroll as stated in his application, the county board of elections shall transfer all information on such application to the appropriate registration records.”