*282 OPINION OF THE COURT
Lawrence E. Kahn, J.
The above-captioned CPLR article 78 proceeding seeks to invalidate an agreement dated February 28, 1989 which authorizes the transfer of the Shoreham Nuclear Power Station to the Long Island Power Authority for decommissioning. It seeks further relief invalidating certain determinations of the Boards of the Long Island Power Authority (LIPA) and the New York Power Authority (NYPA), and permanently enjoining any efforts to implement the agreement.
This court has previously granted the application to intervene by the New York Public Service Commission. It has also denied petitioners’ application for preliminary injunctive relief.
This litigation is the culmination of a process which began in 1973 when the Long Island Lighting Company (LILCO) was issued a construction permit by the Nuclear Regulatory Commission (NRC) to build the Shoreham facility. The submissions make it abundantly clear, and this court is able to take judicial notice of the fact that the Shoreham plant has generated substantial controversy since its construction was first proposed. It has become a political "hot potato” of enormous proportion. Indeed, the determination to decommission Shore-ham has been editorialized as a "blunder so monumental that, like the pyramids, it may prompt future generations to marvel at the ruinous excess of human folly.” (New York Times, Apr. 20, 1989.) The United States Energy Secretary has labeled it an "Alice-In-Wonderland decision.”
The petitioners represent the interests of the various constituencies who have supported the development and utilization of nuclear energy on Long Island. Having been unsuccessful in the political arena, they now resort to the judiciary to achieve their objectives.
The February 28, 1989 agreement provides for the transfer of Shoreham to LIPA for nominal consideration and thereafter, for decommissioning by NYPA, contingent upon approval by the PSC of certain rate increases for LILCO. The agreement is substantially similar to one first executed in June of 1988, with the exception that the latest version deletes the requirement that the New York State Legislature signal its approval by providing certain additional authority to NYPA. The Legislature failed to reach any consensus or enact the *283 appropriate legislation, thereby returning the ball to the executive.
The grounds relied upon by petitioners in their effort to set aside the 1989 agreement are many and varied. However, the primary focus is upon the argument that the agreement violates the separation of powers doctrine, asserting that the Governor, LIPA and NYPA have usurped the powers of the Legislature. In reviewing the submissions, it appears that rather than having its powers usurped, the Legislature has taken a monumental dive in the fervent hope that the storm of controversy would simply go away.
This court is particularly sensitive to the constitutional distinctions which distribute the functions of government between the legislative, executive and judicial branches of government and has consistently sought to uphold a constrained, rather than expanded view of the powers of the executive. In this regard, it is nevertheless evidence that the Governor is constitutionally guaranteed substantial latitude in enforcement of his executive powers (Rapp v Carey, 44 NY2d 157, 163). The Court of Appeals has made it abundantly clear that the doctrine of separation is violated only when the executive’s actions are inconsistent with those of the Legislature, or when he "usurps its prerogatives”. (Clark v Cuomo, 66 NY2d 185, 189.) In the case at bar, he has done neither. While his determination to decommission Shoreham has been widely attacked as political folly, it may not be said to be inconsistent with a Legislature which has refused to deal with the questions or a usurpation of the Legislature’s prerogatives in this area.
The agreement violates no provisions of the LIPA Act or the NYPA Act. Rather, LIPA’s ácquisition of the plant, on its face, would appear to further the purposes of its enabling legislation. There is no provision therein which mandates that LIPA actually replace LILCO. Rather, the Act merely authorizes the acquisition of portions of LILCO’s stock or assets by LIPA under certain circumstances. Indeed, it mandates the closing of Shoreham upon its acquisition by LIPA. A close reading of the statute does not support petitioners’ argument that LIPA must acquire and totally replace LILCO. Rather, it aifords it discretion with respect to the nature and manner of its efforts to remedy the apparent inability of LILCO to service its constituency.
Petitioners also assert that the settlement violates the *284 provisions of the New York Power Authority Act in that the provisions which require NYPA to decommission Shoreham is in derogation of the legislative declaration of policy set forth in the Act. This argument is also without merit. The Legislature has specifically provided in the LIPA Act that NYPA can contract with LIPA for the decommissioning of the plant.
Finally, the court has reviewed petitioners’ remaining contentions concerning violations of the Atomic Energy Act of 1954, violations of section 63 of the Executive Law, the Open Meetings Law, and various constitutional arguments, and finds them to similarly be unpersuasive.
The petition for a judgment pursuant to CPLR article 78, or in the alternative, pursuant to CPLR 3001, declaring null and void the agreement dated February 28, 1989 providing for the transfer of the Shoreham Nuclear Power Station to the Long Island Power Authority for decommissioning; holding that the determinations of the Boards of LIPA and NYPA approving such agreement are not in accordance with law; and permanently enjoining respondents from taking any actions to implement such agreement shall be dismissed.