[614 NYS2d 630]

PIERRE BOURQUIN et al., Appellants, v MARIO M. CUOMO, as Governor of the State of New York, et al., Respondents.

Third Department, July 14, 1994

APPEARANCES OF COUNSEL

*Martin S. Kaufman* and *Douglas Foster,* New York City, for appellants.

*G. Oliver Koppell, Attorney-General,* Albany *(Daniel Smirlock, Peter H. Schiff* and *Peter G. Crary* of counsel), for Mario M. Cuomo, respondent.

*William Cowan,* Albany *(Diane T. Dean* of counsel), for Department of Public Service, respondent.

**OPINION OF THE COURT**

MERCURE, J.

On January 3, 1991, defendant Governor issued Executive Order No. 141 (9 NYCRR 4.141) declaring, *inter alia,* that "it is the policy of this State to foster and encourage citizen participation in utility matters and to facilitate effective representation * * * of residential utility customers", but that "individual participation by residential utility customers in the regulatory process is impracticable because of the expertise required and the disproportionate expense of taking such action". Accordingly, the Executive Order directed the Public Service Commission (hereinafter the PSC) to certify a single Citizens' Utility Board (hereinafter CUB), a private not-for-profit organization, to represent the interests of residential utility customers throughout the State.* This CUB was to have access to four State agency mailings annually for three years following the election of its first permanent board of directors, with enclosures confined to describing the CUB's "purpose, history, nature, activities and achievements" (9 NYCRR 4.141 [3] [c] [i]) and soliciting membership in and contributions to the CUB. The CUB was further required to reimburse the agencies for incremental postage costs incurred over the agencies' normal postage costs.

In May 1991 plaintiffs Pierre Bourquin, Citizens for a Sound Economy, Inc. and Atlantic Legal Foundation, Inc. commenced this declaratory judgment action (originally brought as a CPLR article 78 proceeding) against the Governor claiming that the issuance of the Executive Order (1) violates the doctrine of separation of powers, (2) violates plaintiffs' right to free speech, (3) deprives plaintiffs of equal protection, and (4)

---

* In January 1993, defendant Department of Public Service certified the New York State Citizens' Utility Board as "the single statewide [CUB]" pursuant to the Executive Order.

violates the prohibition against a gift or loan of State moneys. In June 1991, John Faso and Glenn H. Harris were added as plaintiffs, the Department of Public Service (hereinafter DPS) was added as a defendant and plaintiffs sought a declaration that the Executive Order is null and void. Plaintiffs thereafter moved for a preliminary injunction to prevent the implementation of the Executive Order and the Governor and the DPS cross-moved to dismiss based, *inter alia,* on plaintiffs' lack of standing. Supreme Court denied plaintiffs' motion for a preliminary injunction and granted the cross motion only to the extent of finding that plaintiff Atlantic Legal Foundation, Inc. did not have standing. In May 1992, the DPS moved for summary judgment, the Governor apparently joined in the motion and plaintiffs cross-moved for summary judgment. Supreme Court rejected plaintiffs' constitutional arguments, granted defendants' motion and denied plaintiffs' cross motion. An order was entered dismissing plaintiffs' complaint. Plaintiffs appeal.

Because we agree with plaintiffs that the Executive Order violated the principle of separation of powers, we reverse. Although the Governor has the power to enforce legislation and is "accorded great flexibility in determining the methods of enforcement" *(Rapp v Carey,* 44 NY2d 157, 163), executive acts inconsistent with or arrogative of the Legislature's prerogatives are in contravention of the separation of powers doctrine *(Clark v Cuomo,* 66 NY2d 185, 189). The Legislature may not delegate its fundamental lawmaking powers or policy-making choices but may declare its policy in general terms and give the Executive Branch the power to make subsidiary policy choices consistent with the enabling legislation *(Matter of Citizens For An Orderly Energy Policy v Cuomo,* 78 NY2d 398, 410; *Boreali v Axelrod,* 71 NY2d 1, 10). The Governor may not "go beyond stated legislative policy and prescribe a remedial device not embraced by the policy" *(Matter of Broidrick v Lindsay,* 39 NY2d 641, 645-646). Moreover, where it is practicable for the Legislature to set precise standards for the enforcement of legislation, the Governor's flexibility is quite limited *(see, Rapp v Carey, supra).*

Plaintiffs make two arguments in support of their claim that the Executive Order violated the doctrine of separation of powers: first, that the Legislature's failure to pass legislation similar to the Executive Order demonstrates its unwillingness to permit establishment of a CUB as an instrument of public

policy and, second, that the establishment of a CUB goes beyond stated legislative policy. We reject the first argument. The Court of Appeals has repeatedly held that inferences should not be drawn from legislative inaction because of its "inherent ambiguity" *(Clark v Cuomo, supra,* at 190-191; *see generally, Matter of New York State Health Facilities Assn. v Axelrod,* 77 NY2d 340, 348, n 2; *Boreali v Axelrod, supra,* at 13). The several bills rejected by the Legislature between 1977 and 1987 provided for a CUB to have access to the billing envelopes of utility companies and are thus irrelevant *(see, Pacific Gas & Elec. Co. v Public Utils. Commn.,* 475 US 1). Further, none of the bills introduced between 1989 and 1991 left committee and was the subject of debate on the floor of the Legislature. As a result, the Legislature's failure to act does not provide indirect proof of a policy decision against the establishment of a CUB as envisioned by the Executive Order *(cf., Boreali v Axelrod, supra).*

We are in agreement, however, with plaintiffs' second contention, that the Governor impermissibly exceeded stated legislative policy in issuing the Executive Order. The statutory provisions cited by defendants do not provide the requisite authority for the Governor to act; rather, these provisions demonstrate that the establishment of a single CUB with access to State mailings is at odds with the existing legislative policy which charges the PSC, the Consumer Protection Board and the Attorney-General to protect consumers in utility proceedings. Although Public Service Law § 30 establishes a general policy favoring utility consumers as to, *inter alia,* "lengthy delays" of service, it does not contemplate the remedial device of certification of a CUB to have access to State mailings *(see, Rapp v Carey, supra,* at 163). Nor is the other authority cited by defendants sufficient. Public Service Law §§ 65, 79 (1); § 89-b (1) and § 91 merely mandate "just and reasonable" utility charges and Public Service Law § 66 (12) (b); § 80 (10) (b); § 89-c (10) (b) and § 92 (2) (a) require rate changes to be made after public notice and specifically refer to the authority of the PSC. Finally, Executive Law article 20, which authorizes the creation of and sets forth the powers and duties of the Consumer Protection Board, does not provide the requisite authority for the certification of a single CUB. We conclude, based upon all of the above, that by issuing the Executive Order, the Governor exceeded his authority and encroached upon the legislative function *(see, Subcontractors Trade Assn. v Koch,* 62 NY2d 422, 429; *Rapp v Carey, supra;*

*cf., Matter of Citizens For An Orderly Energy Policy v Cuomo,* 78 NY2d 398, 410, *supra).*

In view of our determination, we need not consider plaintiffs' additional contentions, which we find to lack merit in any event.

MIKOLL, J. P., CREW III, WEISS and YESAWICH JR., JJ., concur.

Ordered that the order is reversed, on the law, with costs, defendants' motion for summary judgment denied, plaintiffs' cross motion for summary judgment granted and it is declared that Executive Order No. 141 is unconstitutional.