85 N.Y.2d 781 (1995)
652 N.E.2d 171
628 N.Y.S.2d 618
Pierre Bourquin et al., Respondents,
v.
Mario M. Cuomo, as Governor of the State of New York, et al., Appellants.
Court of Appeals of the State of New York.
Argued April 27, 1995
Decided June 13, 1995.
Diane T. Dean, Albany, and William J. Cowan for Department of Public Service of the State of New York, appellant.
Dennis C. Vacco, Attorney-General, Albany (Daniel Smirlock, Jerry Boone and Peter H. Schiff of counsel), for Mario M. Cuomo, appellant.
Martin S. Kaufman, New York City, and Douglas Foster for respondents.
Pollet & Pollet, New York City (Michael N. Pollet and Sybil H. Pollet of counsel), for New York Citizens Utility Board, Inc., and others, amici curiae.
Judges TITONE, LEVINE and CIPARICK concur with Chief Judge KAYE; Judge SMITH dissents and votes to affirm in a separate opinion in which Judges SIMONS and BELLACOSA concur.
*783 Chief Judge KAYE.
This case requires us to decide whether an Executive Order issued by the Governor violates the principle of separation of powers under the New York State Constitution. We conclude that the Governor acted within his authority, and therefore reverse the order of the Appellate Division declaring the Executive Order unconstitutional.
On January 3, 1991, then-Governor Mario Cuomo issued Executive Order No. 141 (9 NYCRR 4.141) authorizing the creation of a private, not-for-profit corporation known as the Citizens' Utility Board (CUB) intended, among other things, to represent the interests of residential utility customers in ratemaking and other proceedings before the Public Service Commission. In issuing the order creating the CUB, the Governor cited "the policy of this State to foster and encourage citizen participation in utility matters and to facilitate effective representation and advocacy of the interests of residential utility customers in the regulatory process." He noted as well that "individual participation by residential utility customers * * * is impracticable because of the expertise required and the disproportionate expense of taking such action."
In addition to establishing the CUB, Executive Order No. 141 provided that the Board would have access to as many as four State agency mailings per year for the purpose of disseminating information to New York citizens about the CUB's purpose and activities and soliciting memberships and contributions. The Board was required to reimburse the agencies for any increase in postage attributable to its enclosures.
Five months after the issuance of the Executive Order, plaintiff-respondent Pierre Bourquin, a New York "citizen, resident and taxpayer," as well as various other nonprofit corporations "primarily engaged in educating the public about government expenditures * * * [and] representing * * * individuals, organizations and corporations in constitutional and *784 public policy-oriented litigation," challenged Executive Order No. 141 as violative of the separation of powers doctrine. Plaintiffs also sought a preliminary injunction enjoining implementation of the Executive Order.
Supreme Court rejected plaintiffs' separation of powers claim and dismissed their complaint, concluding that "the Legislature has clearly demonstrated its goal of protecting the interests of New York's utility consumers and its further policy aimed at maximizing public participation in the processes aimed at achieving that end." The Executive Order, according to the trial court, "promote[d] these general legislative policies in a manner that [did] not usurp legislative prerogative," such that "defendants acted within their respective constitutional and statutory authority."
The Appellate Division reversed and declared Executive Order No. 141 unconstitutional, concluding "that the Governor impermissibly exceeded stated legislative policy in issuing the Executive Order" because, in the court's view, "[t]he statutory provisions cited by defendants * * * demonstrate that the establishment of a single CUB with access to State mailings is at odds with the existing legislative policy which charges the [Public Service Commission], the Consumer Protection Board and the Attorney-General to protect consumers in utility proceedings" (201 AD2d 104, 107). Defendants now appeal as of right pursuant to CPLR 5601 (b) (1).
The constitutional principle of separation of powers, "implied by the separate grants of power to each of the coordinate branches of government" (Clark v Cuomo, 66 N.Y.2d 185, 189; NY Const, art III, § 1; art IV, § 1), requires that the Legislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies (Matter of New York State Health Facilities Assn. v Axelrod, 77 N.Y.2d 340, 349).
Despite this functional separation, this Court has always understood that the duties and powers of the legislative and executive branches cannot be neatly divided into isolated pockets (Clark v Cuomo, 66 NY2d, at 185; see also, Plaut v Spendthrift Farm, 514 US ___, ___, 115 S Ct 1447, 1465-1466, 131 L Ed 2d 328, 359, 1995 US LEXIS 2843, [*]62 [Apr. 18, 1995] [Breyer, J., concurring] ["(The separation of powers) doctrine does not `divide the branches into watertight compartments,' nor `establish and divide fields of black and white.' * * * (I)mportant separation of powers decisions * * * sometimes *785 turn( ), not upon absolute distinctions, but upon degree."] [citations omitted]). We have thus acknowledged that there need not be a specific and detailed legislative expression authorizing a particular executive act as long as "the basic policy decisions underlying the regulations have been made and articulated by the Legislature" (Matter of New York State Health Facilities Assn., at 348). In other words, "[i]t is only when the Executive acts inconsistently with the Legislature, or usurps its prerogatives, that the doctrine of separation is violated." (Clark, at 189.)
Recognizing the necessity of "some overlap between the three separate branches" of government as well as the "great flexibility" to be accorded the Governor in determining the methods of enforcing legislative policy, this Court in Clark v Cuomo (66 N.Y.2d 185, 189, supra) upheld against a separation of powers challenge then-Governor Cuomo's issuance of an Executive Order establishing a Voter Registration Task Force with access to State agencies in distributing its materials.[1] The decision in Clark, like others that followed (e.g., Matter of New York State Health Facilities Assn. v Axelrod, 77 N.Y.2d 340, supra), resulted from this Court's long-standing and steadfast refusal to construe the separation of powers doctrine in a vacuum, instead viewing the doctrine from a commonsense perspective. As Chief Judge Cardozo explained more than a half-century ago: "[t]he exigencies of government have made it necessary to relax a merely doctrinaire adherence to a principle so flexible and practical, so largely a matter of sensible approximation, as that of the separation of powers" (Matter of Richardson, 247 N.Y. 401, 410 [1928]).
As legislative authorization for the creation of the Task Force at issue in Clark, the Governor relied on Election Law § 3-102 (13) which provided that "the state board of elections shall have the power and duty * * * to encourage the broadest possible voter participation in elections." In support of Executive Order No. 141, the Governor relied on article 20 of the Executive Law  containing nearly identical language  empowering the Consumer Protection Board to "promote and encourage the protection of the legitimate interests of consumers *786 within the state" (Executive Law § 553 [2] [b]).[2] A simple comparison of the above-quoted Election Law provision at issue in Clark with the Executive Law provision at issue here compels the conclusion that the statutes are analogous.[3] Each vests a particular entity (Boards of Elections or the Consumer Protection Board) with the power to promote a broad, even "general" legislative purpose (promoting voter registration or protecting the interests of utility consumers).
The analogy between the two cases is strengthened by the fact that in each case, the Governor  by Executive Order  created an entity other than that contemplated by the Legislature (the Voter Registration Task Force and the CUB) to implement those statutory goals. In Clark, we explicitly rejected the argument that the Legislature's decision to repose certain powers in local Boards of Elections prevented the Governor from establishing another governmental body intended to promote those same policies (Clark, 66 NY2d, at 190).
Indeed, that the creation of the CUB was fully consistent with existing legislative policy is evidenced by the fact that three other entities already had overlapping authority to protect utility customers  the Consumer Protection Board, the Attorney-General and the Public Service Commission. In creating the CUB, the Governor recognized that in part because of the enormous demands on them from other duties, none of these agencies were adequately representing the interests of *787 residential utility customers who lack the incentive to hire lawyers and lobbying groups to advance their interests.
Executive Order No. 141, like the order at issue in Clark, does not formulate a specific policy with respect to utility companies or their residential customers. It does not, for example, instruct the CUB to press for lower utility rates or to seek greater disclosure of the financial status of utility companies. Unlike the detailed and comprehensive Executive Orders and administrative regulations that this Court has struck down in the past (see, Matter of Broidrick v Lindsay, 39 N.Y.2d 641 [affirmative action program for New York City contracts]; Rapp v Carey, 44 N.Y.2d 157 [financial disclosure requirements for State employees]; Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 N.Y.2d 344 [order prohibiting employment discrimination by city contractors on basis of sexual orientation]; Boreali v Axelrod, 71 N.Y.2d 1 [antismoking regulations in public establishments]), Executive Order No. 141 has no substantive content beyond that of creating the CUB itself and giving it access to State mailings for a three-year period. What the CUB, a private not-for-profit corporation, ultimately chooses to do with the funds it solicits is a decision entrusted solely to its membership. Executive Order No. 141 is thus well within the boundaries of this Court's recognition in Clark that the executive branch's mere creation of a new procedural, administrative mechanism, such as a task force or consumer board, to better implement a legislative policy does not offend the Constitution.[4]
Indeed, there is yet another important parallel between the instant case and Clark. In each case, the Legislature considered but failed to enact a bill substantially similar to the provisions of the Executive Orders ultimately issued by the Governor. In each case, the plaintiffs argued that such failure should be taken as proof of hostile legislative intent. As we said in Clark, however, "that proposed legislation similar to [the] Executive Order * * * was not passed does not indicate legislative disapproval of the programs contemplated by the order. Legislative inaction, because of its inherent ambiguity, `affords the most dubious foundation for drawing positive *788 inferences'" (Clark, 66 NY2d, at 190-191 [citations omitted]; cf., Boreali, 71 NY2d, at 13).
While it may have been more desirable for the Legislature to have passed a statute establishing the CUB, the question whether the Governor had the authority to do so by Executive Order is not one of preference but of constitutionality. It is not the role of this Court to dictate how public policy should be implemented, but only to state when and how the Constitution has been offended. The Constitution was not violated by Executive Order No. 141.
Plaintiffs' remaining constitutional challenges to Executive Order No. 141 lack merit. Accordingly, the order of the Appellate Division should be reversed, with costs, defendants' motion for summary judgment granted, plaintiffs' cross motion for summary judgment denied, and judgment granted declaring that Executive Order No. 141 is constitutional.
SMITH, J. (dissenting).
The primary issue here is whether Executive Order No. 141, which directs the Department of Public Service (Department) to certify the establishment of a Citizens' Utility Board (CUB), violates the principle of separation of powers under the New York State Constitution. Because I conclude that it does, I dissent and vote to affirm the order of the Appellate Division.
On January 3, 1991, Governor Mario Cuomo issued Executive Order No. 141 (9 NYCRR 4.141), providing for the creation of a single State-wide Citizens' Utility Board, certified by the Department of Public Service, as a private not-for-profit corporation representing the interests of New York State residential utility customers in the regulatory process. The Executive Order declared, inter alia, "[I]t is the policy of this State to foster and encourage citizen participation in utility matters and to facilitate effective representation and advocacy of the interests of residential utility customers in the regulatory process". An interim board of directors was to be created pursuant to procedures established by the Department of Public Service. Executive Order No. 141 provided that the CUB was to include its literature in mailings made by four State agencies annually for three years after the election of its permanent board of directors "unless the Department of Public Service determines that additional access is necessary" (subd [3] [b]). Access to State agency mailings was exclusively for dissemination of information about the CUB's purpose and activities and to solicit memberships and contributions. The *789 CUB was required to reimburse the agencies for any increase in postage attributable to CUB's enclosures.
Subdivision (4) of the Executive Order provided for approval of the material submitted by CUB for mailing by the agency enclosing that material in its mailing. This approval was limited to a determination of whether the material was "false or misleading" and whether it met specific requirements concerning the purpose and nature of the CUB. Any dispute involving the content of the material was to be resolved by the Department of Public Service.
In May 1991, plaintiffs Pierre Bourquin, Citizens for a Sound Economy, Inc. and Atlantic Legal Foundation, Inc. commenced a CPLR article 78 proceeding against defendant Governor Cuomo seeking a preliminary injunction, alleging, inter alia, that Executive Order No. 141 was unconstitutional as violative of the doctrine of separation of powers. On June 10, 1991 Governor Cuomo moved to dismiss the petition, citing, inter alia, plaintiffs' lack of standing. On June 26, 1991 plaintiffs served an amended petition adding new plaintiffs, John Faso and Glenn H. Harris, and, as an additional defendant, the Department of Public Service. On the same date plaintiffs moved for a preliminary injunction enjoining the implementation of Executive Order No. 141. On July 10, 1991, defendants Cuomo and the Department moved to dismiss the petition, partially on the standing issue. On December 16, 1991 Supreme Court converted the proceeding to one for a declaratory judgment, dismissed all causes of action brought by Atlantic Legal Foundation on the grounds of standing, denied the preliminary injunction and vacated its stay of the implementation of Executive Order No. 141.
On January 27, 1992 plaintiffs filed an amended verified complaint. Subsequently, on May 15, 1992, defendant Department moved for summary judgment. Governor Cuomo apparently joined in the motion. On July 3, 1992 plaintiffs crossmoved for summary judgment.
The same Supreme Court Justice, rejecting plaintiffs' separation of powers claim, granted defendants' motion, denied plaintiffs' cross motion and dismissed the complaint. The Appellate Division reversed the Supreme Court, granted plaintiffs' cross motion for summary judgment and declared that the enactment of Executive Order No. 141 violated the doctrine of separation of powers by exceeding stated legislative policy. The Appellate Division did not address the plaintiffs' *790 contention that Executive Order No. 141 constituted an unconstitutional gift of State property. Defendants appeal as of right pursuant to CPLR 5601 (b) (1).
Defendants contend that Executive Order No. 141 is consistent with the Legislature's pronounced policy of concern for and protection of residential utility consumers contained in the Public Service Law, particularly the Home Energy Fair Practices Act contained in Public Service Law § 30 et seq.[*] Defendants maintain that the creation of an organization operated by and directly responsible to consumers is embraced by the Legislature's stated policy that utility charges be "just and reasonable" (Public Service Law §§ 65, 79 [1]; §§ 89-b, 91) and that no change in rates should be made without public notice (Public Service Law § 66 [12] [b]; § 80 [10] [b]; § 89-c [10] [b]; § 92 [2] [a]). Defendants further maintain that the creation of the Consumer Protection Board by article 20 of the Executive Law demonstrates the Legislature's policy of fairness to consumers.
Plaintiffs contend that Executive Order No. 141 violates the constitutional principle of separation of powers and that it constitutes an unconstitutional gift of State property in violation of article VIII, § 1 of the NY Constitution.
The State policy of separation of powers is embodied in the New York State Constitution. There it states, "The legislative power of this State shall be vested in the Senate and Assembly" (NY Const, art III, § 1) and "The executive power shall be vested in the governor" (NY Const, art IV, § 1). The Constitution charges the Legislature to establish State policy and the executive to implement such policy (see, Clark v Cuomo, 66 N.Y.2d 85; Matter of Broidrick v Lindsay, 39 N.Y.2d 641; Matter of Fullilove v Beame, 48 N.Y.2d 376; Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 N.Y.2d 344; see also, Matter of New York State Health Facilities Assn. v Axelrod, 77 N.Y.2d 340). Nevertheless, there are times when the duties and powers of the Legislature overlap (see, Clark v Cuomo, 66 NY2d, at 189). The executive's power to implement legislation, vested in the Governor, is broad and the Governor is "accorded flexibility in determining the proper method of *791 enforcement" (Matter of Broidrick v Lindsay, 39 N.Y.2d 641, 646). "It is only when the Executive acts inconsistently with the Legislature, or usurps its prerogatives, that the doctrine of separation is violated" (Clark v Cuomo, 66 NY2d, at 189).
We have previously held that the doctrine of separation of powers was not violated where the executive action was a clear implementation of State legislative policy (see, Matter of New York State Health Facilities Assn. v Axelrod, 77 N.Y.2d 340, supra; Clark v Cuomo, 66 N.Y.2d 185, supra). On the other hand, we have concluded that the doctrine was violated by executive action which went beyond the legislative policy or enforcement directives (Boreali v Axelrod, 71 N.Y.2d 1 [Public Health Council improperly promulgated a comprehensive smoking code for areas open to the public]; Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 N.Y.2d 344, supra [Mayor of the City of New York could not promulgate an Executive Order prohibiting employment discrimination on the basis of sexual orientation in City contracts where the Legislature had not adopted such a policy]; Rapp v Carey, 44 N.Y.2d 157 [Governor could not promulgate an Executive Order requiring executive branch employees to file financial disclosure forms and to refrain from certain political and business activities where the Legislature had not adopted such a policy]; Matter of Broidrick v Lindsay, 39 N.Y.2d 641, supra [New York City Deputy Mayor-City Administrator could not mandate certain minority percentages in City construction contracts absent legislative authorization]).
The Legislature's policy favoring the protection of residential consumers does not translate into legislation authorizing the creation of a private not-for-profit corporation with authority to speak on behalf of all residential utility customers. By this Executive Order, the Governor has effectively fashioned public policy in an area where the Legislature has not yet acted, clearly exceeding his authority and violating the principle of separation of powers.
As defendant concedes, the Legislature has expressed its desire that the interests of residential consumers be protected in the area of utilities. To this end, the Legislature has established the Consumer Protection Board which functions primarily to protect consumer interests. Further, the office of the Attorney-General and the Public Service Commission, the rate setting body within the Department of Public Service, are similarly charged to protect consumer interests in Public *792 Service Commission proceedings. Nevertheless, such express legislative policy is insufficient authority for the certification of a single, State-wide CUB with access to State mailings.
Defendant's reliance on Clark v Cuomo (66 N.Y.2d 185, supra) and Matter of New York State Health Facilities Assn. v Axelrod (77 N.Y.2d 340, supra) to support his contention that Executive Order No. 141 furthers the Legislature's policy of protecting residential utility consumers' interest is unpersuasive. What differentiated Executive Order No. 141 from the Executive Order we sustained in Clark v Cuomo (66 N.Y.2d 185, supra) and the regulations we approved in Matter of New York State Health Facilities Assn. v Axelrod (77 N.Y.2d 340, supra) is precisely the lack of the much narrower and more precise statement of legislative policy that supported our determination in those two cases. In creating the Voter Registration Task Force at issue in Clark v Cuomo, the Governor not only relied on Election Law § 3-102 (13), which stated that the Board of Elections had the power and duty "to encourage the broadest possible voter participation in elections," but also on the more particularized provision of Election Law § 5-210 (2) that the county Boards of Elections were required to see that voter registration forms were "as widely and freely distributed as possible" (66 NY2d, at 190). Similarly, in Matter of New York State Health Facilities Assn., the Public Health Council's promulgation of regulations requiring for-profit nursing homes to admit a "reasonable percentage" of Medicaid patients was supported not only by the general principles expressed in sections 363 and 364 (2) (a) of the Social Services Law, that providing medical assistance to the needy is "a matter of public concern" and that the Department of Health is "responsible for * * * establishing and maintaining standards [for nursing homes]", but by the specific requirement of Public Health Law § 2801-a (9) (d) that profit-making nursing homes "not discriminate because of * * * sponsor in admission or retention of patients" (77 NY2d, at 347-348).
The specific ways in which the Executive Order establishes State policy are (1) by authorizing a new remedy for consumer involvement in utility rate setting through the establishment of a private corporation, whose interim board is created pursuant to procedures of the Department of Public Service, with access to State agency mailings to solicit members and financial contributions and (2) by involving State agencies in the approval of the content of communications (through a determination of whether it is false or misleading) sent to *793 State residents by a private entity. Since such actions have not been adopted by the State Legislature, they violate the doctrine of separation of powers (see, Boreali v Axelrod, supra; Under 21, Catholic Home Bur. for Dependent Children v City of New York, supra; Rapp v Carey, supra; Matter of Broidrick v Lindsay, supra).
Accordingly, I dissent and vote to affirm the order of the Appellate Division.
Order reversed, etc.
NOTES
[1] Specifically, the Executive Order at issue in Clark (9 NYCRR 4.43) required all State agencies having contact with the public to make voter registration forms available in their offices and to assist in filling out such forms. A Voter Registration Task Force consisting of the heads of various State agencies was charged with overseeing the implementation of this program (see, Clark, 66 NY2d, at 187).
[2] The other statutory provisions relied on in promulgating Executive Order No. 141 are the Home Energy Fair Practices Act (Public Service Law § 30) where the Legislature "declared [it] to be the policy of this state that the continued provision of gas, electric and steam service to residential customers without unreasonable qualifications or lengthy delays is necessary for the preservation of the health and general welfare and is in the public interest" as well as various sections of the Public Service Law requiring that charges to residential utility consumers be "just and reasonable" (see, Public Service Law §§ 65, 79 [1]; §§ 89-b, 91) and that no changes in rates be made without adequate notice to the public (see, Public Service Law § 66 [12] [b]; § 80 [10] [b]; § 89-c [10] [b]; § 92 [2] [a]).
[3] The provisions of the Social Services Law involved in Matter of New York State Health Facilities Assn. v Axelrod (77 N.Y.2d 340, supra), the other case which the dissent attempts to distinguish (dissenting opn, at 792), also contain similar language. Sections 363 and 364 (2) (a) of the Social Services Law, for example, declare that "[m]edical assistance for needy persons is * * * a matter of public concern" and that the Department of Health "shall be responsible for * * * establishing and maintaining standards [for nursing homes]" (id., at 347).
[4] The dissent concludes that Executive Order No. 141 is unconstitutional because it authorizes "a new remedy for [utility] consumer involvement" (dissenting opn, at 792). The substitution of the word "consumer" with "voter" in this sentence, however, results in precisely the situation involved in Clark where the executive branch created a "new remedy" for unregistered voters.
[*] In Public Service Law § 30, the Legislature "declared to be the policy of this state that the continued provision of gas, electric and steam service to residential customers without unreasonable qualifications or lengthy delays is necessary for the preservation of the health and general welfare and is in the public interest."