Smith, J.
(dissenting). The primary issue here is whether Executive Order No. 141, which directs the Department of Public Service (Department) to certify the establishment of a Citizens’ Utility Board (CUB), violates the principle of separation of powers under the New York State Constitution. Because I conclude that it does, I dissent and vote to affirm the order of the Appellate Division.
On January 3, 1991, Governor Mario Cuomo issued Executive Order No. 141 (9 NYCRR 4.141), providing for the creation of a single State-wide Citizens’ Utility Board, certified by the Department of Public Service, as a private not-for-profit corporation representing the interests of New York State residential utility customers in the regulatory process. The Executive Order declared, inter alla, "[I]t is the policy of this State to foster and encourage citizen participation in utility matters and to facilitate effective representation and advocacy of the interests of residential utility customers in the regulatory process”. An interim board of directors was to be created pursuant to procedures established by the Department of Public Service. Executive Order No. 141 provided that the CUB was to include its literature in mailings made by four State agencies annually for three years after the election of its permanent board of directors "unless the Department of Public Service determines that additional access is necessary” (subd [3] [b]). Access to State agency mailings was exclusively for dissemination of information about the CUB’s purpose and activities and to solicit memberships and contributions. The *789 CUB was required to reimburse the agencies for any increase in postage attributable to CUB’s enclosures.
Subdivision (4) of the Executive Order provided for approval of the material submitted by CUB for mailing by the agency enclosing that material in its mailing. This approval was limited to a determination of whether the material was "false or misleading” and whether it met specific requirements concerning the purpose and nature of the CUB. Any dispute involving the content of the material was to be resolved by the Department of Public Service.
In May 1991, plaintiffs Pierre Bourquin, Citizens for a Sound Economy, Inc. and Atlantic Legal Foundation, Inc. commenced a CPLR article 78 proceeding against defendant Governor Cuomo seeking a preliminary injunction, alleging, inter alla, that Executive Order No. 141 was unconstitutional as violative of the doctrine of separation of powers. On June 10, 1991 Governor Cuomo moved to dismiss the petition, citing, inter alla, plaintiffs’ lack of standing. On June 26, 1991 plaintiffs served an amended petition adding new plaintiffs, John Faso and Glenn H. Harris, and, as an additional defendant, the Department of Public Service. On the same date plaintiffs moved for a preliminary injunction enjoining the implementation of Executive Order No. 141. On July 10, 1991, defendants Cuomo and the Department moved to dismiss the petition, partially on the standing issue. On December 16, 1991 Supreme Court converted the proceeding to one for a declaratory judgment, dismissed all causes of action brought by Atlantic Legal Foundation on the grounds of standing, denied the preliminary injunction and vacated its stay of the implementation of Executive Order No. 141.
On January 27, 1992 plaintiffs filed an amended verified complaint. Subsequently, on May 15, 1992, defendant Department moved for summary judgment. Governor Cuomo apparently joined in the motion. On July 3, 1992 plaintiffs cross-moved for summary judgment.
The same Supreme Court Justice, rejecting plaintiffs’ separation of powers claim, granted defendants’ motion, denied plaintiffs’ cross motion and dismissed the complaint. The Appellate Division reversed the Supreme Court, granted plaintiffs’ cross motion for summary judgment and declared that the enactment of Executive Order No. 141 violated the doctrine of separation of powers by exceeding stated legislative policy. The Appellate Division did not address the plaintiffs’ *790 contention that Executive Order No. 141 constituted an unconstitutional gift of State property. Defendants appeal as of right pursuant to CPLR 5601 (b) (1).
Defendants contend that Executive Order No. 141 is consistent with the Legislature’s pronounced policy of concern for and protection of residential utility consumers contained in the Public Service Law, particularly the Home Energy Fair Practices Act contained in Public Service Law § 30 et seq.* Defendants maintain that the creation of an organization operated by and directly responsible to consumers is embraced by the Legislature’s stated policy that utility charges be "just and reasonable” (Public Service Law §§ 65, 79 [1]; §§ 89-b, 91) and that no change in rates should be made without public notice (Public Service Law § 66 [12] [b]; § 80 [10] [b]; § 89-c [10] [b]; § 92 [2] [a]). Defendants further maintain that the creation of the Consumer Protection Board by article 20 of the Executive Law demonstrates the Legislature’s policy of fairness to consumers.
Plaintiffs contend that Executive Order No. 141 violates the constitutional principle of separation of powers and that it constitutes an unconstitutional gift of State property in violation of article VIII, § 1 of the NY Constitution.
The State policy of separation of powers is embodied in the New York State Constitution. There it states, "The legislative power of this State shall be vested in the Senate and Assembly” (NY Const, art III, § 1) and "The executive power shall be vested in the governor” (NY Const, art IV, § 1). The Constitution charges the Legislature to establish State policy and the executive to implement such policy (see, Clark v Cuomo, 66 NY2d 85; Matter of Broidrick v Lindsay, 39 NY2d 641; Matter of Fullilove v Beame, 48 NY2d 376; Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 NY2d 344; see also, Matter of New York State Health Facilities Assn. v Axelrod, 77 NY2d 340). Nevertheless, there are times when the duties and powers of the Legislature overlap (see, Clark v Cuomo, 66 NY2d, at 189). The executive’s power to implement legislation, vested in the Governor, is broad and the Governor is "accorded flexibility in determining the proper method of *791 enforcement” (Matter of Broidrick v Lindsay, 39 NY2d 641, 646). "It is only when the Executive acts inconsistently with the Legislature, or usurps its prerogatives, that the doctrine of separation is violated” (Clark v Cuomo, 66 NY2d, at 189).
We have previously held that the doctrine of separation of powers was not violated where the executive action was a clear implementation of State legislative policy (see, Matter of New York State Health Facilities Assn. v Axelrod, 77 NY2d 340, supra; Clark v Cuomo, 66 NY2d 185, supra). On the other hand, we have concluded that the doctrine was violated by executive action which went beyond the legislative policy or enforcement directives (Boreali v Axelrod, 71 NY2d 1 [Public Health Council improperly promulgated a comprehensive smoking code for areas open to the public]; Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 NY2d 344, supra [Mayor of the City of New York could not promulgate an Executive Order prohibiting employment discrimination on the basis of sexual orientation in City contracts where the Legislature had not adopted such a policy]; Rapp v Carey, 44 NY2d 157 [Governor could not promulgate an Executive Order requiring executive branch employees to file financial disclosure forms and to refrain from certain political and business activities where the Legislature had not adopted such a policy]; Matter of Broidrick v Lindsay, 39 NY2d 641, supra [New York City Deputy Mayor-City Administrator could not mandate certain minority percentages in City construction contracts absent legislative authorization]).
The Legislature’s policy favoring the protection of residential consumers does not translate into legislation authorizing the creation of a private not-for-profit corporation with authority to speak on behalf of all residential utility customers. By this Executive Order, the Governor has effectively fashioned public policy in an area where the Legislature has not yet acted, clearly exceeding his authority and violating the principle of separation of powers.
As defendant concedes, the Legislature has expressed its desire that the interests of residential consumers be protected in the area of utilities. To this end, the Legislature has established the Consumer Protection Board which functions primarily to protect consumer interests. Further, the office of the Attorney-General and the Public Service Commission, the rate setting body within the Department of Public Service, are similarly charged to protect consumer interests in Public *792 Service Commission proceedings. Nevertheless, such express legislative policy is insufficient authority for the certification of a single, State-wide CUB with access to State mailings.
Defendant’s reliance on Clark v Cuomo (66 NY2d 185, supra) and Matter of New York State Health Facilities Assn. v Axelrod (77 NY2d 340, supra) to support his contention that Executive Order No. 141 furthers the Legislature’s policy of protecting residential utility consumers’ interest is unpersuasive. What differentiated Executive Order No. 141 from the Executive Order we sustained in Clark v Cuomo (66 NY2d 185, supra) and the regulations we approved in Matter of New York State Health Facilities Assn. v Axelrod (77 NY2d 340, supra) is precisely the lack of the much narrower and more precise statement of legislative policy that supported our determination in those two cases. In creating the Voter Registration Task Force at issue in Clark v Cuomo, the Governor not only relied on Election Law § 3-102 (13), which stated that the Board of Elections had the power and duty "to encourage the broadest possible voter participation in elections,” but also on the more particularized provision of Election Law § 5-210 (2) that the county Boards of Elections were required to see that voter registration forms were "as widely and freely distributed as possible” (66 NY2d, at 190). Similarly, in Matter of New York State Health Facilities Assn., the Public Health Council’s promulgation of regulations requiring for-profit nursing homes to admit a "reasonable percentage” of Medicaid patients was supported not only by the general principles expressed in sections 363 and 364 (2) (a) of the Social Services Law, that providing medical assistance to the needy is "a matter of public concern” and that the Department of Health is "responsible for * * * establishing and maintaining standards [for nursing homes]”, but by the specific requirement of Public Health Law § 2801-a (9) (d) that profit-making nursing homes "not discriminate because of * * * sponsor in admission or retention of patients” (77 NY2d, at 347-348).
The specific ways in which the Executive Order establishes State policy are (1) by authorizing a new remedy for consumer involvement in utility rate setting through the establishment of a private corporation, whose interim board is created pursuant to procedures of the Department of Public Service, with access to State agency mailings to solicit members and financial contributions and (2) by involving State agencies in the approval of the content of communications (through a determination of whether it is false or misleading) sent to *793 State residents by a private entity. Since such actions have not been adopted by the State Legislature, they violate the doctrine of separation of powers (see, Boreali v Axelrod, supra; Under 21, Catholic Home Bur. for Dependent Children v City of New York, supra; Rapp v Carey, supra; Matter of Broidrick v Lindsay, supra).
Accordingly, I dissent and vote to affirm the order of the Appellate Division.
Judges Titone, Levine and Ciparick concur with Chief Judge Kaye; Judge Smith dissents and votes to affirm in a separate opinion in which Judges Simons and Bellacosa concur.
Order reversed, etc.

 In Public Service Law § 30, the Legislature "declared to be the policy of this state that the continued provision of gas, electric and steam service to residential customers without unreasonable qualifications or lengthy delays is necessary for the preservation of the health and general welfare and is in the public interest.”