*783 OPINION OF THE COURT
Chief Judge Kaye.
This case requires us to decide whether an Executive Order issued by the Governor violates the principle of separation of powers under the New York State Constitution. We conclude that the Governor acted within his authority, and therefore reverse the order of the Appellate Division declaring the Executive Order unconstitutional.
On January 3, 1991, then-Governor Mario Cuomo issued Executive Order No. 141 (9 NYCRR 4.141) authorizing the creation of a private, not-for-profit corporation known as the Citizens’ Utility Board (CUB) intended, among other things, to represent the interests of residential utility customers in ratemaking and other proceedings before the Public Service Commission. In issuing the order creating the CUB, the Governor cited "the policy of this State to foster and encourage citizen participation in utility matters and to facilitate effective representation and advocacy of the interests of residential utility customers in the regulatory process.” He noted as well that "individual participation by residential utility customers * * * is impracticable because of the expertise required and the disproportionate expense of taking such action.”
In addition to establishing the CUB, Executive Order No. 141 provided that the Board would have access to as many as four State agency mailings per year for the purpose of disseminating information to New York citizens about the CUB’s purpose and activities and soliciting memberships and contributions. The Board was required to reimburse the agencies for any increase in postage attributable to its enclosures.
Five months after the issuance of the Executive Order, plaintiff-respondent Pierre Bourquin, a New York "citizen, resident and taxpayer,” as well as various other nonprofit corporations "primarily engaged in educating the public about government expenditures * * * [and] representing * * * individuals, organizations and corporations in constitutional and *784 public policy-oriented litigation,” challenged Executive Order No. 141 as violative of the separation of powers doctrine. Plaintiffs also sought a preliminary injunction enjoining implementation of the Executive Order.
Supreme Court rejected plaintiffs’ separation of powers claim and dismissed their complaint, concluding that "the Legislature has clearly demonstrated its goal of protecting the interests of New York’s utility consumers and its further policy aimed at maximizing public participation in the processes aimed at achieving that end.” The Executive Order, according to the trial court, "promote[d] these general legislative policies in a manner that [did] not usurp legislative prerogative,” such that "defendants acted within their respective constitutional and statutory authority.”
The Appellate Division reversed and declared Executive Order No. 141 unconstitutional, concluding "that the Governor impermissibly exceeded stated legislative policy in issuing the Executive Order” because, in the court’s view, "[t]he statutory provisions cited by defendants * * * demonstrate that the establishment of a single CUB with access to State mailings is at odds with the existing legislative policy which charges the [Public Service Commission], the Consumer Protection Board and the Attorney-General to protect consumers in utility proceedings” (201 AD2d 104, 107). Defendants now appeal as of right pursuant to CPLR 5601 (b) (1).
The constitutional principle of separation of powers, "implied by the separate grants of power to each of the coordinate branches of government” (Clark v Cuomo, 66 NY2d 185, 189; NY Const, art III, § 1; art IV, § 1), requires that the Legislature make the critical policy decisions, while the executive branch’s responsibility is to implement those policies (Matter of New York State Health Facilities Assn. v Axelrod, 77 NY2d 340, 349).
Despite this functional separation, this Court has always understood that the duties and powers of the legislative and executive branches cannot be neatly divided into isolated pockets (Clark v Cuomo, 66 NY2d, at 185; see also, Plaut v Spendthrift Farm, 514 US —, —, 115 S Ct 1447, 1465-1466, 131 L Ed 2d 328, 359, 1995 US LEXIS 2843, *62 [Apr. 18, 1995] [Breyer, J., concurring] ["(The separation of powers) doctrine does not 'divide the branches into watertight compartments,’ nor 'establish and divide fields of black and white.’ * * * (I)mportant separation of powers decisions * * * some *785 times turn( ), not upon absolute distinctions, but upon degree.”] [citations omitted]). We have thus acknowledged that there need not be a specific and detailed legislative expression authorizing a particular executive act as long as "the basic policy decisions underlying the regulations have been made and articulated by the Legislature” (Matter of New York State Health Facilities Assn., at 348). In other words, "[i]t is only when the Executive acts inconsistently with the Legislature, or usurps its prerogatives, that the doctrine of separation is violated.” (Clark, at 189.)
Recognizing the necessity of "some overlap between the three separate branches” of government as well as the "great flexibility” to be accorded the Governor in determining the methods of enforcing legislative policy, this Court in Clark v Cuomo (66 NY2d 185, 189, supra) upheld against a separation of powers challenge then-Governor Cuomo’s issuance of an Executive Order establishing a Voter Registration Task Force with access to State agencies in distributing its materials.[1] The decision in Clark, like others that followed (e.g., Matter of New York State Health Facilities Assn. v Axelrod, 77 NY2d 340, supra), resulted from this Court’s long-standing and steadfast refusal to construe the separation of powers doctrine in a vacuum, instead viewing the doctrine from a commonsense perspective. As Chief Judge Cardozo explained more than a half-century ago: "[t]he exigencies of government have made it necessary to relax a merely doctrinaire adherence to a principle so flexible and practical, so largely a matter of sensible approximation, as that of the separation of powers” (Matter of Richardson, 247 NY 401, 410 [1928]).
As legislative authorization for the creation of the Task Force at issue in Clark, the Governor relied on Election Law § 3-102 (13) which provided that "the state board of elections shall have the power and duty * * * to encourage the broadest possible voter participation in elections.” In support of Executive Order No. 141, the Governor relied on article 20 of the Executive Law — containing nearly identical language— empowering the Consumer Protection Board to "promote and encourage the protection of the legitimate interests of consum *786 ers within the state” (Executive Law § 553 [2] [b]).[2] A simple comparison of the above-quoted Election Law provision at issue in Clark with the Executive Law provision at issue here compels the conclusion that the statutes are analogous.[3] Each vests a particular entity (Boards of Elections or the Consumer Protection Board) with the power to promote a broad, even "general” legislative purpose (promoting voter registration or protecting the interests of utility consumers).
The analogy between the two cases is strengthened by the fact that in each case, the Governor — by Executive Order— created an entity other than that contemplated by the Legislature (the Voter Registration Task Force and the CUB) to implement those statutory goals. In Clark, we explicitly rejected the argument that the Legislature’s decision to repose certain powers in local Boards of Elections prevented the Governor from establishing another governmental body intended to promote those same policies (Clark, 66 NY2d, at 190).
Indeed, that the creation of the CUB was fully consistent with existing legislative policy is evidenced by the fact that three other entities already had overlapping authority to protect utility customers — the Consumer Protection Board, the Attorney-General and the Public Service Commission. In creating the CUB, the Governor recognized that in part because of the enormous demands on them from other duties, none of these agencies were adequately representing the interests of *787 residential utility customers who lack the incentive to hire lawyers and lobbying groups to advance their interests.
Executive Order No. 141, like the order at issue in Clark, does not formulate a specific policy with respect to utility companies or their residential customers. It does not, for example, instruct the CUB to press for lower utility rates or to seek greater disclosure of the financial status of utility companies. Unlike the detailed and comprehensive Executive Orders and administrative regulations that this Court has struck down in the past (see, Matter of Broidrick v Lindsay, 39 NY2d 641 [affirmative action program for New York City contracts]; Rapp v Carey, 44 NY2d 157 [financial disclosure requirements for State employees]; Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 NY2d 344 [order prohibiting employment discrimination by city contractors on basis of sexual orientation]; Boreali v Axelrod, 71 NY2d 1 [antismoking regulations in public establishments]), Executive Order No, 141 has no substantive content beyond that of creating the CUB itself and giving it access to State mailings for a three-year period. What the CUB, a private not-for-profit corporation, ultimately chooses to do with the funds it solicits is a decision entrusted solely to its membership. Executive Order No. 141 is thus well within the boundaries of this Court’s recognition in Clark that the executive branch’s mere creation of a new procedural, administrative mechanism, such as a task force or consumer board, to better implement a legislative policy does not offend the Constitution.[4]
Indeed, there is yet another important parallel between the instant case and Clark. In each case, the Legislature considered but failed to enact a bill substantially similar to the provisions of the Executive Orders ultimately issued by the Governor. In each case, the plaintiffs argued that such failure should be taken as proof of hostile legislative intent. As we said in Clark, however, "that proposed legislation similar to [the] Executive Order * * * was not passed does not indicate legislative disapproval of the programs contemplated by the order. Legislative inaction, because of its inherent ambiguity, 'affords the most dubious foundation for drawing positive *788 inferences’ ” (Clark, 66 NY2d, at 190-191 [citations omitted]; cf., Boreali, 71 NY2d, at 13).
While it may have been more desirable for the Legislature to have passed a statute establishing the CUB, the question whether the Governor had the authority to do so by Executive Order is not one of preference but of constitutionality. It is not the role of this Court to dictate how public policy should be implemented, but only to state when and how the Constitution has been offended. The Constitution was not violated by Executive Order No. 141.
Plaintiffs’ remaining constitutional challenges to Executive Order No. 141 lack merit. Accordingly, the order of the Appellate Division should be reversed, with costs, defendants’ motion for summary judgment granted, plaintiffs’ cross motion for summary judgment denied, and judgment granted declaring that Executive Order No. 141 is constitutional.

. Specifically, the Executive Order at issue in Clark (9 NYCRR 4.43) required all State agencies having contact with the public to make voter registration forms available in their offices and to assist in filling out such forms. A Voter Registration Task Force consisting of the heads of various State agencies was charged with overseeing the implementation of this program (see, Clark, 66 NY2d, at 187).

. The other statutory provisions relied on in promulgating Executive Order No. 141 are the Home Energy Fair Practices Act (Public Service Law § 30) where the Legislature "declared [it] to be the policy of this state that the continued provision of gas, electric and steam service to residential customers without unreasonable qualifications or lengthy delays is necessary for the preservation of the health and general welfare and is in the public interest” as well as various sections of the Public Service Law requiring that charges to residential utility consumers be "just and reasonable” (see, Public Service Law §§ 65, 79 [1]; §§ 89-b, 91) and that no changes in rates be made without adequate notice to the public (see, Public Service Law § 66 [12] [b]; § 80 [10] [b]; § 89-c [10] [b]; § 92 [2] [a]).

. The provisions of the Social Services Law involved in Matter of New York State Health Facilities Assn, v Axelrod (77 NY2d 340, supra), the other case which the dissent attempts to distinguish (dissenting opn, at 792), also contain similar language. Sections 363 and 364 (2) (a) of the Social Services Law, for example, declare that "[m]edical assistance for needy persons is * * * a matter of public concern” and that the Department of Health "shall be responsible for * * * establishing and maintaining standards [for nursing homes]” (id., at 347).

. The dissent concludes that Executive Order No. 141 is unconstitutional because it authorizes "a new remedy for [utility] consumer involvement” (dissenting opn, at 792). The substitution of the word "consumer” with "voter” in this sentence, however, results in precisely the situation involved in Clark where the executive branch created a "new remedy” for unregistered voters.