*739 OPINION OF THE COURT
John W. Carter, J.
Defendant, HeathclifF Haneiph, stands charged with attempted criminal possession of a controlled substance in the seventh degree, a class B misdemeanor, under docket No. 2001KN063974. Defendant now moves to dismiss the information and underlying complaint pursuant to CPL 30.30 on the ground that the People have failed to answer ready for trial within the statutory period. In his motion, defendant contends that the four Executive Orders issued by Governor Pataki suspending certain provisions of CPL 30.30 in response to the events of September 11, 2001 are unconstitutional. Based upon the court’s examination of the court papers, defendant’s motion, the People’s affirmation in opposition and defendant’s reply, the court now makes the following findings of fact and conclusions of law.
Findings of Fact
On August 11, 2001, defendant was arraigned on the charge of criminal possession of a controlled substance in the seventh degree, a class A misdemeanor (Penal Law § 220.03). At arraignment, the People served and filed a supporting deposition as well as a field test. Defendant was released on his own recognizance and the case was adjourned to October 1, 2001 for discovery by stipulation. Although the People allege that they answered ready for trial at arraignment, the minutes of defendant’s arraignment contain no such statement of readiness.
On September 11, 2001, terrorists attacked and destroyed the World Trade Center. That day, Governor Pataki issued Executive Order No. 113, in which he declared a disaster emergency in the State of New York (see, 9 NYCRR 5.113).
On September 12, 2001, Governor Pataki issued Executive Order No. 113.7, which suspended “Sections 30.10 and 30.30 of the Criminal Procedure Law, so far as it bars criminal prosecutions whose limitation period concludes during the period commencing from the date that the disaster emergency was declared pursuant to Executive Order Number 113, issued on September 11, 2001, until further notice” (9 NYCRR 5.113.7).
On October 4, 2001, the Governor issued Executive Order No. 113.28 (9 NYCRR 5.113.28), which extended the suspension of CPL 30.30 through October 12, 2001. Executive Order No. 113.28 further suspended through November 8, 2001 *740 subdivision (4) (g) of CPL 30.30 “so far as it may be interpreted to limit ‘exceptional circumstances’ in a way that would not include any delay attributable to the disaster emergency” (9 NYCRR 5.113.28).
On November 7, 2001, in Executive Order No. 113.42, Governor Pataki extended the provisions of Executive Order No. 113.28 through December 7, 2001 (9 NYCRR 5.113.42). Finally, on December 7, 2001, in Executive Order No. 113.43-A, Governor Pataki extended the provisions of Executive Order No. 113.28 through January 7, 2002 (9 NYCRR 5.113.43-A).
The People have submitted evidence that, by letter dated September 21, 2001, the New York City Police Department (NYPD) informed the District Attorney’s office that it would accept notifications for only (1) grand jury proceedings in which the defendants were incarcerated, (2) felony hearings commenced prior to September 11th, and (3) felony trials commenced prior to September 11th. Thereafter, on October 19, 2001, the NYPD, in cooperation with the Mayor’s Criminal Justice Coordinator, expanded the available notification to (1) all felony trials, (2) grand jury presentments and felony hearings in which the defendants were incarcerated, and (3) misdemeanor hearings and trials in which the defendants were incarcerated.
The People assert that on October 1, 2002, they answered ready for trial. The court action sheet indicates that discovery by stipulation was served and filed and the case was adjourned for trial. In the instant motion, the defense alleges that the People had not turned over several discovery items to the defense and, thus, they could not be ready for trial. In any event, the case was adjourned to October 29, 2001, for trial.
On November 2, 2001, the category of available notifications was expanded to include (1) all felony cases, (2) misdemeanor hearings and trials in which the defendants were incarcerated, and (3) certain Family Court cases. Finally, on November 16, 2001, the NYPD, in cooperation with the Mayor’s Criminal Justice Coordinator, notified the District Attorney’s office that, as of November 19, 2001, the District Attorney’s office could notify police officers to appear and testify in all criminal court and Family Court cases.
On October 29, 2001, the People answered not ready for trial due to the NYPD policy restricting notification of officers to testify at trial in misdemeanors involving nonincarcerated defendants. Accordingly, the court adjourned the case to November 27, 2001.
*741 On November 27, 2001, the People answered not ready for trial because the arresting officer was unavailable. Accordingly, the court adjourned the case to December 12, 2001, chargeable to the People.
On December 12, 2001, the People answered not ready for trial, as the trial assistant was actually engaged. The People requested a two-week adjournment. The court adjourned the case to January 14, 2002, with two weeks chargeable to the People.
On January 14, 2002, the People answered not ready for trial because the arresting officer had his regular day oif that day and requested a three-day adjournment. Defense counsel requested a further adjournment to January 24, 2002. Accordingly, the court adjourned the case to January 24, 2002, with three days charged to the People.
On January 24, 2002, the People answered not ready for trial. Both the arresting officer and the undercover officer had been notified to appear, but the undercover officer had not yet appeared in court. The People requested a one-week adjournment in order to obtain the presence of all of their witnesses in court. The defense requested a further adjournment. Apparently, defense counsel was changing jobs and he was not sure that he would be permitted to keep defendant as a client. Accordingly, the court adjourned the case to February 20, 2002, with seven days chargeable to the People.
On February 20, 2002, the People answered not ready for trial due to the arresting officer’s vacation schedule. Accordingly, the court adjourned the case to February 28, 2002, chargeable to the People.
On February 28, 2002, the People answered ready for trial. The People also reduced the information to attempted criminal possession of a controlled substance in the seventh degree, a B misdemeanor. After extensive colloquy on the production and receipt of discovery materials, the defense requested an adjournment to review the materials. Accordingly, the court adjourned the case, at defense request, to March 19, 2002.
On March 18, 2002, defense counsel filed the instant motion.
Conclusions of Law
Where a defendant is originally charged with a misdemeanor which is punishable by a sentence of more than three months, the court must grant defendant’s motion to dismiss the case if the People are not ready for trial within 90 days after the commencement of the criminal action (CPL 30.30 [1] [b]).
*742 Initially, defense counsel argues that since the information was reduced from a class A misdemeanor to a class B misdemeanor, the People were required to be ready for trial within 60 days. However, that argument was specifically rejected by the Appellate Term, Second Department, in People v Galloway (190 Misc 2d 144 [App Term, 2d Dept 2001]), when the court specifically held that reduction of a class A misdemeanor to a class B misdemeanor does not convert the applicable ready trial period from 90 days to 60 days. In so holding, the Galloway court followed the rationale of People v Sommersell (166 Misc 2d 774 [App Term, 2d Dept 1995]), in which the court held that the statute establishing a shortened time period for speedy trial purposes when a felony is converted to a misdemeanor does not address the situation when an A misdemeanor is converted to a B misdemeanor. The Sommersell court noted that where the Legislature fails to address a situation, the omission is an indication that exclusion was indicated (see, CPL 30.30 [5] [c]). Accordingly, in this case, the People were required to be ready for trial within 90 days.
Defense counsel next argues that Governor Pataki’s four post-September 11th Executive Orders are unconstitutional. The court rejects this argument for the following reasons.
Governor Pataki’s initial September 11, 2001 Executive Order declaring a state disaster emergency within the territorial boundaries of the State of New York was authorized by Executive Law § 28, which provides: “1. Whenever the governor, on his own initiative or pursuant to a request from one or more chief executives, finds that a disaster has occurred or may be imminent for which local governments are unable to respond adequately, he shall declare a disaster emergency by executive order.”
The Governor’s subsequent Executive Orders suspending or modifying the provisions of CPL 30.30 were authorized by Executive Law § 29-a, which provides:
“1. Subject to the state constitution, the federal constitution and federal statutes and regulations, and after seeking the advice of the commission, the governor may by executive order temporarily suspend specific provisions of any statute, local law, ordinance, or orders, rules or regulations, or parts thereof, of any agency during a state disaster emergency, if compliance with such provisions would prevent, hinder, or delay action necessary to cope with the disaster.”
*743 Initially, the court notes that although CPL 30.30 is entitled a “speedy trial” statute, the history of its adoption makes evident that it addresses only the problem of prosecutorial readiness, and is not a speedy trial statute in the constitutional sense (People v Anderson, 66 NY2d 529 [1985], citing People v Worley, 66 NY2d 523, 527 [1985]; People v Brothers, 50 NY2d 413, 416-417 [1980]; People ex rel. Franklin v Warden, Brooklyn House of Detention for Men, 31 NY2d 498, 501-502 [1973]; Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPL 30.30, at 148-149). Accordingly, the governing constitutional standard in this instance is not the 6th Amendment right to a speedy trial but, rather, the US Constitution article III principle of separation of powers.
The constitutional principle of separation of powers, “implied by the separate grants of power to each of the coordinate branches of government” (Clark v Cuomo, 66 NY2d 185, 189 [1985]), requires that the Legislature make critical policy decisions, while the executive branch’s function is to implement those decisions (Matter of New York State Health Facilities Assn. v Axelrod, 77 NY2d 340 [1991]).
Despite this functional separation, the Court of Appeals has recognized that the duties and powers of the various branches of government cannot always be completely separated. Thus, the Court of Appeals has acknowledged that there need not always be a specific legislative directive authorizing a particular executive act as long as “the basic policy decisions underlying the regulations have been made and articulated by the Legislature” (Matter of New York State Health Facilities Assn., at 348). “It is only when the Executive acts inconsistently with the Legislature, or usurps its prerogatives, that the doctrine of separation is violated” (Clark, at 189).
In several instances that did not rise to the level of emergency or disaster events, the Court of Appeals has found that executive orders did not violate the doctrine of separation of powers. For instance, in Dorst v Pataki (90 NY2d 696 [1997]), the Court of Appeals held that a statute permitting the Governor to issue executive orders excluding or limiting any class of otherwise eligible inmates from participating in a temporary release program did not violate separation of powers. Similarly, in Bourquin v Cuomo (85 NY2d 781 [1995]), the Court of Appeals held that the Governor did not violate the constitutional principle of separation of powers by issuing an executive order which authorized the creation of a Citizens’ Utility Board to represent the interests of residential utility *744 customers in ratemaking proceedings before the Public Service Commission.
Moreover, it is the duty of the courts to adopt construction of a statute that will bring it into harmony with the Constitution, if the statutory language will permit (Matter of Seitz v Drogheo, 21 NY2d 181 [1967]). If, on a construction that appears reasonable, in accord with common sense and the statutory language, and fairly within the contemplation of the Legislature, constitutionality can be sustained, the statute will not be struck down (20 NY Jur 2d, Constitutional Law § 63).
Mindful of these principles, the court finds that the Governor did not usurp the functions of the Legislature in issuing the Executive Orders. The attack on the World Trade Center was the single largest attack upon the mainland United States in its entire history. That day, all of lower Manhattan was evacuated. Thereafter, the courts were closed anywhere from several days upwards of a week. New York City as well as the entire state remained on alert of imminent attack for several weeks. For the first weeks, all available law enforcement personnel were on postattack duty. It is only through the fortitude of the citizens of New York as well as the heroic conduct of law enforcement and rescue personnel that chaos did not result throughout the entire city.
CPL 30.30 (4) (g) provides for an exclusion from the prosecution’s readiness requirement when “exceptional circumstances” exist. One can hardly think of an event that fits the definition of an exceptional circumstance more closely than the September 11th attack. Given that the purpose of CPL 30.30 is to serve the narrow purpose of prosecutorial readiness (People v Sinistaj, 67 NY2d 236 [1986]), and given the severe restrictions upon the People’s ability to be ready for trial in the weeks immediately following September 11th, the court finds that the Governor’s Executive Orders were consistent with the intent of the Legislature and, therefore, are constitutional.
Turning now to the substance of the motion, the court finds that the People are properly charged with 31 days of the period between August 11, 2001 and October 1, 2001. Although the People now assert that they answered ready for trial at arraignment, the arraignment transcript contains no such assertion. Accordingly, the period between August 11, 2001 and September 11, 2001 should be charged to the People. The period between September 11, 2001 and October 1, 2001 is excludable pursuant to Executive Order No. 113.7.
The People assert that they answered ready on October 1, 2001. The defense asserts that the People could not have been *745 ready because they failed to turn over necessary discovery materials. In any event, pursuant to Executive Order No. 113.28, the period between October 1, 2001 and October 29, 2001 is excludable. Similarly, pursuant to Executive Order Nos. 113.28 and 113.42, the period between October 29, 2001 and November 27, 2001 is excludable.
The 15-day period between November 27, 2001 and December 12, 2001 is chargeable to the People, a fact which they concede. The court finds further that the People should be charged with 14 days of the period between December 12, 2001 and January 14, 2002.
The People are properly charged with three days of the period between January 14, 2002 and January 24, 2002. The People are also properly charged with seven days of the period between January 24, 2002 and February 20, 2002. Finally, the People are properly charged with the eight-day period between February 20, 2002 and February 28, 2002.
In that the defense has established only 78 days of delay, defendant’s motion to dismiss the complaint must be denied.