[833 NYS2d 175]

In the Matter of JONATHAN R. McCAFFREY, Appellant, v TOWN
OF EAST FISHKILL et al., Respondents.

Second Department, March 27, 2007

### APPEARANCES OF COUNSEL

*Alex C. Dell*, Albany (*Matthew C. Hug* of counsel), for appellant.

*Donoghue, Thomas, Auslander & Drohan, LLP*, Hopewell Junction (*James P. Drohan* and *Stuart S. Waxman* of counsel), for respondents.

*Michael E. Kenneally, Jr.*, Albany, for Association of Towns of the State of New York, amicus curiae.

### OPINION OF THE COURT

SPOLZINO, J.

General Municipal Law § 207-c (1) requires a town to continue to pay the compensation of a police officer who is injured in the line of duty, despite the officer's inability to perform the duties of his or her position, until such time as the officer is once again able to perform those duties. A town is permitted to discontinue such payments under certain limited circumstances set forth in the statute (General Municipal Law § 207-c [2]). The question presented by this appeal is whether a town may set off, as against the amounts it is paying to such an officer, any sums that the officer may receive as disability insurance benefits from the United States Social Security Administration. We conclude that the statute provides for no such setoff and that, therefore, there is no authority for a town to do so.

The petitioner is a police officer employed by the Town of East Fishkill, who was injured in a motor vehicle accident in the course of his duties. Pursuant to General Municipal Law § 207-c, the Town continued to pay the petitioner his full salary after he was disabled, until the petitioner applied for and began to receive Social Security Disability Insurance (hereinafter SSDI) benefits. After the Town verified the petitioner's receipt of those benefits, the Town Supervisor advised the petitioner that the Town would thereafter reduce its payments to him by the amount that he was receiving in SSDI benefit payments.

When the reduction began, with the petitioner's next paycheck, the petitioner commenced this CPLR article 78 proceeding challenging the Town's determination. The Supreme Court dismissed the proceeding. We reverse.

General Municipal Law § 207-c is a legislative plan intended to provide additional protection to police officers who are injured or sickened in the course of their duties, in recognition of the heightened risk of injury attendant to their public service (*see* *Matter of Balcerak v County of Nassau*, 94 NY2d 253, 259 [1999]; *Matter of Dobbertin v Town of Chester*, 292 AD2d 382, 383-384 [2002]). The statute specifically addresses the issue of benefits from other sources by providing for the termination of the statutorily-required payments in certain circumstances. Pursuant to General Municipal Law § 207-c (2), the Town is permitted to discontinue its payments only if the police officer receives benefits from one of three other sources—an accidental disability retirement allowance under Retirement and Social Security Law § 363; a disability retirement allowance under section 363-c of that statute; or a "similar accidental disability pension provided by the pension fund of which he [or she] is a member."*

The federal SSDI program provides neither an accidental disability retirement allowance nor a disability retirement allowance under the New York Retirement and Social Security Law. Since SSDI benefits are thus not specifically enumerated in the statute, the Town may reduce its payments by reason of an officer's receipt of such benefits only if SSDI benefits constitute an "accidental disability pension provided by the pension fund of which [the petitioner] is a member" that is "similar" (General Municipal Law § 207-c [2]) to the statutory allowances provided for in Retirement and Social Security Law §§ 363 and 363-c. We conclude that SSDI benefits do not constitute an accidental disability pension similar to the statutory allowance provided for in Retirement and Social Security Law §§ 363 and 363-c.

Retirement and Social Security Law §§ 363 and 363-c, enacted in 1966 and 1984, respectively, are each part of a statutory

* Unlike the similar provisions applicable to firefighters (*see* General Municipal Law § 207 [a] [2]), the provision that is applicable here provides for a discontinuance of benefits, not a reduction. Here, however, the Town chose only to reduce the petitioner's benefits and not to discontinue them. Presumably, if it is within the discretion of the Town to discontinue the benefits, it would equally be within the Town's authority to discontinue those benefits in part, as it has done. Since the issue before us is whether the Town has authority to reduce its payments in any amount, it is unnecessary for us to address this distinction.

statewide program for the retirement of police officers and firefighters. Section 363 entitles a member of the program to an "accidental disability retirement allowance" if he or she becomes "[p]hysically or mentally incapacitated for performance of duty as the natural and proximate result of an accident not caused by his [or her] own willful negligence sustained in such service" (Retirement and Social Security Law § 363 [a] [1]). Benefits pursuant to Retirement and Social Security Law § 363-c are in lieu of benefits provided under section 363, and are available to a police officer or firefighter who is rendered disabled and caused to retire as a result of a line-of-duty accident occurring after January 1, 1985 (*see* Retirement and Social Security Law § 363-c [a]). The retirement allowance payable under either section consists of a pension plus an annuity based upon the member's contributions to the retirement plan prior to his or her disability (*see* Retirement and Social Security Law § 363 [e]; § 363-c [f]). The essential attributes of these plans are that they provide enhanced retirement benefits, that the entitlement to such benefits is triggered by duty-related injuries, and that benefits are available when the firefighter or police officer can no longer perform the duties required of his or her position, even if he or she is not disabled from performing other work (*see Matter of Scheuring v New York State Comptroller*, 32 AD3d 1127 [2006]; *Matter of Liber v McCall*, 6 AD3d 950 [2004]).

SSDI benefits are different. In addition to being a creature of federal, not state, law, the SSDI program is not a pension program, it is an insurance program (*see* 42 USC § 423 [c] [1] [A], [B]; *Sanchez v Schweiker*, 656 F2d 966, 968 [1981], *cert denied* 456 US 943 [1982]; *Sciarotta v Bowen*, 735 F Supp 148, 151 [1989]). Its benefits are available not only to members, but are paid, upon application, to every individual not yet of retirement age who "is insured for disability insurance benefits (as determined under subsection (c) (1) of this section)" and is under a disability as defined in the statute (*see* 42 USC § 423 [a] [1]). Its benefits are thus payable to any person disabled within the meaning of the program, regardless of the circumstances in which the disability occurred. Moreover, "disability," for purposes of Social Security, is defined, with certain exceptions not relevant here, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months" (42 USC § 423 [d] [1] [A]). Since SSDI benefits are thus available only to persons who cannot perform even sedentary work, the SSDI program is not an "accidental disability pension" similar to the pensions available under the Retirement and Social Security Law, as would be required to support a setoff or deduction pursuant to General Municipal Law § 207-c (2) (*see Matter of County of Erie v Hevesi*, 17 AD3d 967, 969 [2005]).

The legislative history of General Municipal Law § 207-c provides further support for the conclusion that the receipt by a disabled police officer of SSDI benefits does not allow a town to discontinue its section 207-c payments. The SSDI program was established in 1956 (*see* Social Security Amendments of 1956, Pub L 880, ch 836, tit I, § 103 [a], adding Social Security Act, tit II, § 223, [c] [2], added by 70 US Stat 815, codified as amended at 42 USC § 423 [d] [1] [A]). When General Municipal Law § 207-c was enacted five years later (*see* L 1961, ch 920, § 1), it provided for the discontinuance of payments when the disabled officer received benefits pursuant to Retirement and Social Security Law former § 63, but made no reference to the SSDI program. On two further occasions, the Legislature similarly failed to provide for the discontinuance or reduction of section 207-c payments as a result of SSDI benefits. When it amended General Municipal Law § 207-c (2) to refer to a police officer's receipt of Retirement and Social Security Law § 363 benefits, in place of the "obsolete" reference to Retirement and Social Security Law § 63 benefits, the Legislature again did not identify SSDI benefits as a basis for a change in section 207-c payments (*see* Dept of Law Mem for Governor, May 25, 1973, Bill Jacket, L 1973, ch 721, at 2-3; Mem of Dept of Civ Serv, May 22, 1973, Bill Jacket, L 1973, ch 721, at 6). Similarly, in 1984, the Legislature added the reference to an officer's receipt of Retirement and Social Security Law § 363-c benefits as an additional ground for the discontinuance of General Municipal Law § 207-c benefits, but again did not refer to the SSDI program (L 1984, ch 661, § 5).

While legislative inaction is generally regarded as an unreliable indicator of legislative intent (*see United States v Price*, 361 US 304, 310-311 [1960]; *Bourquin v Cuomo*, 85 NY2d 781, 787 [1995]; *Clark v Cuomo*, 66 NY2d 185, 190-191 [1985]), the Legislature's failure to include a particular provision in legislation is evidence that it intended to exclude that provision (*see Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.*, 90 NY2d

274, 284-285 [1997]; *People v Tychanski*, 78 NY2d 909, 911-912 [1991]; *Pajak v Pajak*, 56 NY2d 394, 397 [1982]). This inference is particularly appropriate here, where it is apparent from the legislative history of the companion provision for firefighters, General Municipal Law § 207-a (2), that the Legislature was aware of the possibility that a disabled police officer could recover SSDI benefits in addition to his or her payments pursuant to General Municipal Law § 207-c, and nevertheless did not incorporate into that legislation any authority for a setoff or discontinuance of section 207-c benefits on that basis.

When General Municipal Law § 207-a was enacted in 1938 (L 1938, ch 562), and when it was later recodified in 1941 (L 1941, ch 15) and amended in 1946 (L 1946, ch 919) and 1951 (L 1951, ch 812), the SSDI program did not exist. In 1977, the Legislature added General Municipal Law § 207-a (2), establishing, in language almost identical to that of the first sentence of General Municipal Law § 207-c (2), a setoff for a firefighter's Retirement and Social Security Law § 363 disability retirement allowance or similar pension benefits provided under a pension plan (L 1977, ch 965). The amendment was supported by numerous municipal officials, including more than a dozen city mayors and town supervisors, as a cost-cutting measure for municipalities (*see* Bill Jacket, L 1977, ch 965, at 25-38, 43-45, 56-62, 93). Representatives of several state agencies provided memoranda, however, urging that the law did not go far enough, specifically noting that a disabled firefighter might also be eligible for SSDI benefits (*see e.g.* Mem from Mario Cuomo, Secretary of State, to Judah Gribetz, Counsel to Governor Hugh L. Carey, July 15, 1977, at 3, Bill Jacket, L 1977, ch 965, at 21). The Permanent Commission on Public Employee Pension and Retirement Systems was more direct, pointing out explicitly that a disabled firefighter might also be eligible for SSDI benefits and that, in such event,"the individual would not only be receiving public payments each year equal to his former wage, but would also be receiving disability benefits equal to approximately 30% of his former wage (or more), at least half of which were paid for by the public employer'' (Letter from Harold Conroy, Acting Chairman of Permanent Commn on Pub Empl Pension and Retirement Sys, to Judah Gribetz, Counsel to Governor Hugh L. Carey, Aug. 4, 1977, at 2, Bill Jacket, L 1977, ch 965, at 22-23). Even the Assembly's Joint Committee on Rules noted that "[t]his bill may permit a fireman granted an accidental disability retirement to temporarily collect more through disability

than he earned while working" and that "*[t]he combination of accidental disability retirement allowance, the differential paid by the employer, and Social Security disability payments would yield an amount greater than that paid the fireman for productive activities*" (Budget Rep on Bills, Assembly Comm on Rules, July 29, 1977, at 4, Bill Jacket, L 1977, ch 965, at 51 [emphasis supplied]).

There was thus a widespread recognition, by both the legislative and executive branches, that a disabled firefighter might, by virtue of receiving SSDI benefits, collect more than the wages he had been earning while healthy, and that the bill that came to be enacted as General Municipal Law § 207-a (2) provided no basis upon which a municipality could reduce the wages it was paying the disabled firefighter by the amount of SSDI benefits that the firefighter was receiving. Nevertheless, the Legislature did not address the issue in the legislation. In these circumstances, the only reasonable conclusion that can be drawn from the Legislature's failure to do so is that the Legislature intended that no such reduction be permissible. By parity of reasoning, the virtually identical language of General Municipal Law § 207-c (2) must also be read to exclude such a reduction.

The Town, relying upon *Matter of Farber v City of Utica* (97 NY2d 476 [2002], *cert denied* 537 US 823 [2002]), argues that the Legislature could not have concluded that a disabled police officer should be permitted to receive more when disabled than he or she would have received when working. The issue in *Farber*, which involved firefighters' disability benefits under General Municipal Law § 207-a (2), was whether the reduction in section 207-a payments by reason of the petitioner's Retirement and Social Security Law § 363-c pension, for which the Legislature had explicitly provided, applied to a supplemental allowance received by the firefighter pursuant to Retirement and Social Security Law § 378. Because the supplemental allowance at issue in *Farber* "derives from" the firefighter's Retirement and Social Security Law § 363-c benefit entitlement (*see Farber, supra* at 480), however, the Court of Appeals concluded that the city was authorized to make the deduction it claimed by the explicit text of General Municipal Law § 207-a (2). Thus, while the Court spoke in *Farber* of it being "contrary to [the] underlying legislative intent" (*see Farber, supra* at 481) that the disabled firefighter should receive an amount in excess of that which he would have received had he been working, it did so in the context of construing the extent of a reduction for which the

Legislature had explicitly provided. It was not addressing payments such as those received by the petitioner here under the SSDI program, for the deduction of which there is no corresponding statutory authority.

General Municipal Law § 207-c is a statutory command that the Town continue to pay the salary of a disabled police officer despite the officer's disability. General Municipal Law § 207-c does not contain language providing that the officer "shall receive" his or her regular salary and wages, which language would imply that the Town is obligated only to ensure that the officer's compensation does not fall below that to which he or she would have been entitled in the absence of the disability. Rather, the statute affirmatively commands that the full amount of the officer's regular salary or wages "shall be *paid* by the municipality . . . by which he is employed" (General Municipal Law § 207-c [1] [emphasis supplied]), subject only to the statutorily enumerated setoffs, thereby implying, if not stating directly, that the Town is obligated to pay the officer's full compensation, regardless of any payments from a collateral source that may be available to the officer. Since the statute does not otherwise provide for a deduction on the basis of the officer's receipt of SSDI benefits, such a deduction is not permissible.

The remaining arguments made by the Town and the amicus present no basis upon which to recognize the validity of the reduction in benefits that is at issue here. Initially, the Town is not necessarily correct that the petitioner will continue to receive both his section 207-c payments and his SSDI benefits. Pursuant to the Social Security Act, SSDI benefits "shall be reduced" by periodic benefits payable to the claimant, on account of the claimant's total disability, under any other law or plan of a state or political subdivision (*see* 42 USC § 424a [a] [2] [B]; [4]). In other words, strict compliance with the statute would require that the petitioner's SSDI benefits be reduced by the amount he receives as General Municipal Law § 207-c compensation.

Even if the SSDI payments were not subject to discontinuance, however, the mere fact that the petitioner is receiving both payments is not a basis for the reduction. Payments pursuant to General Municipal Law § 207-c constitute the disabled officer's salary and wages, not some additional compensation for the disability that is limited by the loss the officer has suffered or is subject to reduction as a collateral source payment under

CPLR 4545 (c). That provision applies only to a judgment after trial (*see Teichman v Community Hosp. of W. Suffolk*, 205 AD2d 16, 19 [1994], *affd* 87 NY2d 514 [1996]). Nor is it relevant that the Town contributed, through its payroll taxes, to the fund from which the SSDI benefits are paid. The Town is obligated by law to pay those amounts (*see* Internal Revenue Code [26 USC] § 3111[a]), without regard to any benefits that may be received by the petitioner or anyone else as a result. In any event, neither the source of the funding for a sum that a disabled officer may receive, nor the potential for a duplicative recovery by the police officer by reason of the receipt of that sum, provides a basis for the claimed reduction (*see Musgrove v American Protection Ins. Co.*, 32 AD3d 916 [2006]). General Municipal Law § 207-c (6), although creating a cause of action by a municipality that pays compensation to a disabled officer to recover against the tortfeasor who caused the police officer's injuries, similarly fails to support the Town's position, since neither the Social Security Administration nor the injured officer is a tortfeasor. Although that provision was in fact enacted to prevent an injured officer from receiving a windfall, its plain language makes clear that the municipality merely stands in the shoes of the officer as against the tortfeasor, and not as against any other benefit provider (*see Musgrove v American Protection Ins. Co., supra*; *Village of Suffern v Baels*, 215 AD2d 751 [1995]; *Foy v Florczuk*, 51 AD2d 534 [1976]; *see also City of Buffalo v Maggio*, 21 NY2d 1017, 1018-1020 [1968]).

Whether it is fair or unfair for the petitioner to receive both General Municipal Law § 207-c payments and SSDI benefits is for the Legislature to decide. The issue before us is, quite simply, what the Legislature has provided. For the reasons that have been discussed, we conclude that the Legislature has provided that the Town may neither discontinue nor reduce its payment of the petitioner's full salary as a result of the petitioner's receipt of SSDI benefits. Accordingly, the petition is reinstated, the Town's motion to dismiss the petition is denied, the petition is granted, the Town's determination is annulled, and the Town is directed to pay to the petitioner the amounts that were improperly withheld from his paycheck, retroactive to July 8, 2005, together with statutory interest on the sum deducted from each paycheck so affected, commencing on the date each paycheck was payable (*see* CPLR 5001 [a], [b]). In light of this determination, we do not reach the petitioner's claim of a due process entitlement to a hearing.

RIVERA, J.P., KRAUSMAN and LIFSON, JJ., concur.

Ordered that the order and judgment is reversed, on the law, with costs, the petition is reinstated, the Town's motion to dismiss the petition is denied, the petition is granted, the Town's determination is annulled, and the Town is directed to pay the petitioner, retroactive to July 8, 2005, the amounts it deducted from the benefits provided to him pursuant to General Municipal Law § 207-c, consisting of the sums he received as Social Security Disability Insurance benefits, together with statutory interest on the sum deducted from each paycheck so affected, commencing on the date each paycheck was payable.