OPINION OF THE COURT
George B. Ceresia, Jr., J.
Petitioner New York City Citizens Lobbying Against Smoker Harassment, or NYC C.L.A.S.H. (hereinafter petitioner), is a not-for-profit corporation dedicated to advancing and promoting the interests of smokers, and protecting the legal rights of smokers. In February 2013, respondents New York State Office of Parks, Recreation & Historic Preservation and Rose Harvey, in her official capacity as Commissioner of the New York State Office of Parks, Recreation & Historic Preservation (hereinafter collectively referred to as respondents) adopted a regulation — 9 NYCRR 386.1 — which establishes outdoor no-smoking areas within certain parks, historic sites and recreational facilities.
According to respondents, 9 NYCRR 386.1 was promulgated to “allow . . . our patrons to enjoy the outdoors, breathe fresh air, walk, swim, exercise and experience State Parks’ amenities and programs without being exposed to secondhand tobacco smoke and tobacco litter” (Talluto off, exhibit A at 25).
“Examples of areas that may be designated as No Smoking Areas include: playgrounds, swimming pool decks, beaches, sport or athletic fields and courts, recreational facilities, picnic shelters, fishing piers, marinas, historic sites, group camps, park preserves, gardens, concessions, educational programming, or other areas where visitors congregate, including within fifty feet of entrances to buildings” (9 NYCRR 386.1 [a] [1]).
The challenged regulation also entirely bans outdoor smoking in state parks located within the confines of New York City (see 9 NYCRR 386.1 [a] [2]).
In April 2013, petitioner commenced the instant “hybrid” CPLR article 78 proceeding/declaratory judgment action seeking: (1) a declaration that 9 NYCRR 386.1 is unconstitutional as violative of the separation of powers doctrine; (2) a declaration that 9 NYCRR 386.1 is arbitrary and capricious; (3) an order enjoining and permanently restraining respondents from *1098 implementing or enforcing 9 NYCRR 386.1; (4) an order enjoining and permanently restraining respondents from implementing or enforcing any policy, rule or regulation in any way prohibiting or restricting outdoor smoking or tobacco use of any kind in state parks, historic sites or any other facility or property under respondents’ jurisdiction; and (5) an order enjoining and permanently restraining respondents from installing “No-Smoking,” “Smoking is Prohibited” and “Tobacco Use is Prohibited” signs on respondents’ property, and further directing respondents to remove any such signage already installed on respondents’ property. Respondents answered and oppose the relief sought.
Discussion
Here, petitioner contends that respondents usurped the role of the legislature by promulgating a regulation designed to set public policy. In support of its assertion that 9 NYCRR 386.1 contravenes respondents’ administrative rule-making function, petitioner cites Boreali v Axelrod (71 NY2d 1 [1987]), the landmark Court of Appeals decision regarding constitutional separation of powers. For their part, respondents rely upon the broad language of the Parks, Recreation and Historic Preservation Law and maintain that the subject regulation is consistent with their expressly delegated authority to protect the health, safety and welfare of park patrons, and to manage their facilities (see Parks, Recreation and Historic Preservation Law § 3.09 [2], [5]). To this end, respondents aver that Boreali is not controlling in this matter.
I. The Separation of Powers Doctrine
“The constitutional principle of separation of powers, implied by the separate grants of power to each of the coordinate branches of government, requires that the Legislature make the critical policy decisions, while the executive branch’s responsibility is to implement those policies” (Bourquin v Cuomo, 85 NY2d 781, 784 [1995] [internal quotation marks and citations omitted]; see Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 821 [2003]; Ellicott Group, LLC v State of N.Y. Exec. Dept. Off. of Gen. Servs., 85 AD3d 48, 54 [2011]). Although “there need not be a specific and detailed legislative expression authorizing a particular executive act as long as ‘the basic policy decisions underlying the [executive action] have been made and articulated by the Legislature’ ” (Bourquin v Cuomo, 85 NY2d at 785, quoting Matter of New York State Health Facilities Assn. *1099 v Axelrod, 77 NY2d 340, 348 [1991]), “when the Executive acts inconsistently with the Legislature, or usurps its prerogatives, . . . the doctrine of separation is violated” (Clark v Cuomo, 66 NY2d 185, 189 [1985]; see Bourquin v Cuomo, 85 NY2d at 785; Roberts v Health & Hosps. Corp., 87 AD3d 311, 322 [2011], lv denied 17 NY3d 717 [2011]).
II. Boreali v Axelrod Overview
In Boreali, the Court of Appeals held that the Public Health Council (hereinafter PHC) went beyond its lawfully delegated authority when it promulgated regulations prohibiting smoking in a wide variety of indoor areas open to the public (see Boreali v Axelrod, 71 NY2d at 14).[1] The Court reasoned that the regulations were invalid because the PHC “stretched th[e] [Public Health Law] beyond its constitutionally valid reach when it. . . draft[ed] a code embodying its own assessment of what public policy ought to be” (Boreali v Axelrod, 71 NY2d at 9).
Four “coalescing circumstances” persuaded the Court that “the difficult-to-define line between administrative rule-making and legislative policy-making ha[d] been transgressed” (Boreali v Axelrod, 71 NY2d at 11). Those circumstances are as follows: (1) whether the regulation is based solely upon economic and social concerns; (2) whether the regulation created a comprehensive set of rules in the absence of legislative guidance; (3) whether the agency was acting in an area in which the legislature has repeatedly tried, but failed, to reach agreement; and (4) whether the regulation involved issues which required no special expertise or technical competence in the agency’s field (Boreali v Axelrod, 71 NY2d at 10-14). “No one factor . . . may validate or invalidate a regulation . . . the four factors must be viewed in combination” (New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene, 2013 NY Slip Op 30609[U] [2013], *7 [Sup Ct, NY County 2013], affd 110 AD3d 1 [2013], citing Boreali v Axelrod, 71 NY2d at 11).
III. Application to the Instant Matter
In urging the court to invalidate 9 NYCRR 386.1, petitioner devotes the crux of its argument to the second and third Boreali *1100 factors.[2] With regard to the second factor, the Court of Appeals considered the imposition of smoking restrictions to be fraught with “difficult social problems,” which must be resolved by “making choices among competing ends” and, thus, an area especially suited for legislative guidance (Boreali, 71 NY2d at 13). While the legislature ultimately enacted a comprehensive law concerning indoor smoking many years after Boreali was rendered (see Public Health Law § 1399-n et seq.), respondents do not seriously dispute the absence of a legislatively established outdoor tobacco use policy. Therefore, it cannot be said that, in adopting 9 NYCRR 386.1, respondents “merely fill[ed] in the details of broad legislation describing the over-all policies to be implemented” (Boreali, 71 NY2d at 13).
Nor does the broad language of the Parks, Recreation and Historic Preservation Law empower respondents to promulgate rules regulating conduct bearing any tenuous relationship to park patrons’ health or welfare (see Parks, Recreation and Historic Preservation Law § 3.09). Accordingly, the court finds that respondents extended their reach beyond interstitial rule-making and into the realm of legislating.
As to the third factor, the present situation is strikingly similar to that of the smoking ban discussed in Boreali. Between the 2001-2002 and 2013-2014 sessions, both the Senate and Assembly have attempted, albeit unsuccessfully, to target smoking in public parks (see e.g. 2013 NY Assembly Bill A553; 2013 NY Senate-Assembly Bill S464, A450; 2011 NY Senate-Assembly Bill S6564, A6156-A; 2011 NY Assembly Bill A1532; 2009 NY Assembly Bill A1837; 2007 NY Assembly Bill A7325; 2007 NY Assembly Bill A1402; 2005 NY Assembly Bill A306; 2003 NY Assembly Bill A738; 2001 NY Assembly Bill A8675). Members of the Assembly, in particular, have repeatedly introduced such bills only to have the legislation referred to a standing committee (see e.g. 2013 NY Assembly Bill A553; 2013 NY Senate-Assembly Bill S464, A450; 2011 NY Assembly Bill A1532; 2009 NY Assembly Bill A1837). In the court’s view, this is a strong indication that the legislature is uncertain of how to address the issue. As the Court of Appeals aptly stated, “repeated failures by the Legislature ... do not automatically entitle an *1101 administrative agency to take it upon itself to fill the vacuum and impose a solution of its own” (Boreali, 71 NY2d at 13).
Turning to the fourth factor, respondents concede that special expertise or technical competence is no longer required to understand that secondhand tobacco smoke is deleterious to the health of nonsmokers, especially children (see respondents’ mem of law at 11). “[W]hen viewed in combination,” the court finds that the Boreali factors strongly weigh in favor of invalidating 9 NYCRR 386.1 (Boreali, 71 NY2d at 11). The court, therefore, concludes that, like the PHC in Boreali, respondents exceeded their statutory authority, thereby violating the separation of powers doctrine.
Finally, it bears mentioning that nothing in this decision is intended to circumscribe respondents’ legitimate powers. Nor is this decision intended to express an opinion on the wisdom of outdoor smoking regulations, provided that they are enacted by the government body with the authority to do so. In light of the foregoing determination, the court need not reach petitioner’s alternative argument that the subject regulation is arbitrary and capricious.
Accordingly it is hereby, declared that 9 NYCRR 386.1 is invalid as violative of the separation of powers doctrine; and it is further ordered that respondents are enjoined and permanently restrained from implementing or enforcing 9 NYCRR 386.1; and it is further ordered that respondents remove any “No-Smoking,” “Smoking is Prohibited,” and “Tobacco Use is Prohibited” signs previously installed on their property in connection with the implementation and/or enforcement of 9 NYCRR 386.1; and it is further ordered that, to the extent respondents intended to install additional “No-Smoking,” “Smoking is Prohibited,” and “Tobacco Use is Prohibited” signs consistent with the implementation and/or enforcement of 9 NYCRR 386.1, they are enjoined and permanently restrained from doing so; and it is further ordered and adjudged that the petition is granted as set forth above.

. In 2003, the legislature enacted an amended Clean Indoor Air Act, which prohibited smoking in a significant number of indoor public areas (see Public Health Law § 1399-o).

. Petitioner has taken the position that the first Boreali factor is not “relevant to the instant case” (petitioner’s mem of law at 9). Respondents, however, deny that they have “constructed, or even attempted to construct, a regulatory scheme laden with exceptions based solely upon economic and social concerns” (respondents’ mem of law at 9).