Cuomo v New York State Commn. on Ethics & Lobbying in Govt. (2024 NY Slip Op 02568)

Cuomo v New York State Commn. on Ethics & Lobbying in Govt.

2024 NY Slip Op 02568

Decided on May 9, 2024

Appellate Division, Third Department

Powers, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 9, 2024

CV-23-1778

[*1]Andrew M. Cuomo, Respondent,
v
New York State Commission on Ethics and Lobbying in Government, Appellant.

Calendar Date:February 16, 2024

Before: Egan Jr., J.P., Clark, Reynolds Fitzgerald, McShan and Powers, JJ.

Letitia James, Attorney General, Albany (Dustin J. Brockner of counsel), for appellant.
Holwell Shuster & Goldberg LLP, New York City (Gregory J. Dubinsky of counsel), for respondent.
Richard J. Davis, New York City, for New York City Bar Association and others, amici curiae.

Powers, J.
Appeal from an order of the Supreme Court (Thomas Marcelle, J.), entered September 11, 2023, in Albany County, which, among other things, granted plaintiff's motion declaring Executive Law § 94 (10) and (14) unconstitutional.
In 2020, while serving as Governor, plaintiff sought and was granted approval from the Joint Commission on Public Ethics (hereinafter JCOPE) to publish a book related to the COVID-19 pandemic, which plaintiff later published under the title "American Crisis: Leadership Lessons from the COVID-19 Pandemic." Despite this approval, JCOPE subsequently commenced an investigation into plaintiff's publication of this book and, as a result, plaintiff was charged with ethics violations. However, in 2022 the Legislature enacted a new version of Executive Law § 94 in response to the alleged failings of JCOPE in general. This amounted to a sweeping overhaul to the policing of ethics violations by government officials and created defendant as a replacement for JCOPE. Defendant was established within the Department of State and tasked with "administering, enforcing, and interpreting New York state's ethics and lobbying laws" (Executive Law § 94 [1] [a]), including Public Officers Law §§ 73, 73-a, 74; Legislative Law art 1-A; and Civil Service Law § 107. Following its creation, defendant elected to proceed on the charges against plaintiff that had previously been brought by JCOPE.
Prior to any hearings related to the charges against him, plaintiff commenced the instant action for declaratory judgment seeking to find Executive Law § 94 unconstitutional and moved to enjoin defendant from any further action on the pending charges against him. Defendant cross-moved for summary judgment seeking declaratory judgment in its favor on the constitutionality of Executive Law § 94. Following oral argument, Supreme Court granted plaintiff the relief sought, finding that Executive Law § 94 (10) and (14), and all powers ancillary thereto, were unconstitutional divestitures of the governor's authority to enforce the laws. Accordingly, the court enjoined defendant from acting in any way inconsistent with this finding. Defendant appeals.
We affirm. "Legislative enactments enjoy a strong presumption of constitutionality and parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity beyond a reasonable doubt" (Delgado v State of New York, 194 AD3d 98, 103 [3d Dept 2021] [internal quotation marks and citations omitted], affd 39 NY3d 242 [2022]; see Center for Jud. Accountability, Inc. v Cuomo, 167 AD3d 1406, 1409 [3d Dept 2018], appeal dismissed 33 NY3d 993 [2019], lv dismissed & denied 34 NY3d 961 [2019]). Legislative power in New York is vested in the Senate and Assembly (see NY Const, art III, § 1), whereas executive power is vested in the governor (see NY Const, art IV, § 1). Among other powers, the governor "shall take care that the laws are faithfully executed" (NY Const, art IV, § 3), which "include[s] [*2]the power to enforce and implement legislative enactments" (Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 NY2d 344, 356 [1985]). Thus, separation of powers is "implied by the separate grants of power to each of the coordinate branches of government" (Bourquin v Cuomo, 85 NY2d 781, 784 [1995] [internal quotation marks and citation omitted]).
"The concept of the separation of powers is the bedrock of the system of government adopted by this State in establishing three coordinate and coequal branches of government, each charged with performing particular functions. The principle requires that the Legislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies" (Matter of LeadingAge N.Y., Inc. v Shah, 32 NY3d 249, 259 [2018] [internal quotation marks and citations omitted]; see Garcia v New York City Dept. of Health & Mental Hygiene, 31 NY3d 601, 608 [2018]). While "some overlap between the three separate branches does not violate the constitutional principle of separation of powers[,] . . . when [a branch] acts inconsistently with [the powers of another], or usurps its prerogatives, . . . the doctrine of separation is violated" (Clark v Cuomo, 66 NY2d 185, 189 [1985]).
Defendant consists of 11 members who are nominated, subject to certain eligibility restrictions, by various members of the executive and legislative branches (see Executive Law § 94 [3] [a], [e]). Five members are nominated by the executive branch: the governor nominates three members; the attorney general nominates one member; and the comptroller nominates one member (see Executive Law § 94 [3] [a]). Whereas six members are nominated by members of the legislative branch: the temporary president of the Senate nominates two members; the speaker of the Assembly nominates two members; the minority leader of the Senate nominates one member; and the minority leader of the Assembly nominates one member (see Executive Law § 94 [3] [a]). A majority of members constitutes a quorum (see Executive Law § 94 [4] [h]). Once appointed, a member "may be removed by majority vote of [defendant] for substantial neglect of duty, misconduct in office, violation of the confidentiality restrictions set forth in [Executive Law § 94], inability to discharge the powers or duties of office or violation[s] of [Executive Law § 94]" (Executive Law § 94 [4] [c]).
Prior to appointment, all nominations are reviewed by the independent review committee (hereinafter IRC), which consists of the deans of New York's accredited law schools, or an associate dean if designated by the dean (see Executive Law § 94 [2] [c]). The IRC is specifically "tasked with reviewing, approving, or denying the members of [defendant] as nominated" to determine whether the nominee "meet[s] the qualifications necessary . . . based on their background and expertise" (Executive Law § 94 [2] [c]; [3] [d]).[FN1] The IRC must conduct this review "and approve or deny [*3]each candidate" within 30 days (Executive Law § 94 [3] [b]). Meetings of the IRC are not open to the public and members are not considered public officers for purposes of the Public Officers Law (see Executive Law § 94 [3] [k]-[l]). A member of the IRC may only be removed by a majority vote of the IRC under the same limited circumstances as a member of defendant (see Executive Law § 94 [3] [i]).
As is relevant here, defendant is empowered to receive and review complaints regarding violations of Public Officers Law §§ 73, 73-a and 74; Legislative Law article 1-A and § 5-b; as well as Civil Service Law § 107 (see Executive Law § 94 [10] [a]). Upon receipt of a complaint, defendant's staff reviews the complaint to determine whether to commence an investigation. If an investigation is commenced, notification is provided to the subject of the investigation and, following the investigation, defendant's staff prepares a report setting forth the allegations, evidence gathered, relevant law and a recommendation (see Executive Law § 94 [10] [f]). Defendant reviews this report and determines, by a majority vote, whether to "return the matter to the staff for further investigation or accept or reject the staff recommendation" (Executive Law § 94 [10] [f]).
If defendant determines that there is credible evidence of a violation of relevant law, the subject of the investigation must be provided a due process hearing before an independent arbitrator (see Executive Law § 94 [10] [h]-[i]). Following the hearing, the arbitrator makes a nonbinding recommendation to defendant as to the appropriate penalty or whether any further action should be taken, which recommendation defendant may reverse, remand or dismiss (see 19 NYCRR 941.13 [a], [c], [d]). Upon finding that the subject of the investigation has committed a violation of applicable law, defendant may impose penalties or fines (see Executive Law § 94 [10] [n]), as well as refer the matter to the individual's employer for disciplinary action (see Executive Law § 94 [10] [p] [ii]) or recommend the impeachment of statewide elected officials (see Executive Law § 94 [10] [p] [ii]). However, defendant lacks jurisdiction to impose penalties or discipline on legislative officials and staff and may only prepare a written report and provide same to the Legislative Ethics Commission, along with a copy of the file and hearing record (see Executive Law § 94 [10] [p] [i]).
We find that by enacting the foregoing scheme for the enforcement of the applicable ethics laws, the Legislature, though well intentioned in its actions, violated the bedrock principles of separation of powers. Despite defendant's assertion to the contrary, this Court may not utilize the Legislature's motive or the beneficial purposes of this legislation to overlook this violation. Even the most advantageous legislation violates the dictates of separation of powers if it results in one branch of government encroaching upon the powers of another for the purpose [*4]of expanding its own powers (see e.g. INS v Chadha,462 US 919, 951 [1983]; Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 NY2d at 359; Rapp v Carey, 44 NY2d 157, 167 [1978]).
Pursuant to the Governor's authority to execute the laws, she is afforded wide discretion in determining the proper methods of enforcement (see Rapp v Carey, 44 NY2d at 163; Matter of Broidrick v Lindsay, 39 NY2d 641, 646 [1976]). However, Executive Law § 94 revokes the Governor's enforcement power with respect to the ethics laws, thereby depriving her of all discretion in determining the methods of enforcement of these laws. Instead, it places this power into the hands of defendant, an entity over which she maintains extremely limited control and oversight, as she appoints a minority of members and has no ability to remove members. Moreover, appointments must be approved by the IRC, an external nongovernmental entity made up of people who are in that position solely by virtue of their employment and do not answer to the populace. As such, Executive Law § 94 creates an agency with executive power, in that it has the authority to investigate and impose penalties for the violation of the ethics laws, while being entirely outside the control of the executive branch. Thus, it usurps the Governor's power to ensure the faithful execution of the applicable ethics laws (see Kuttner v Cuomo, 147 AD2d 215, 220 [3d Dept 1989], affd 75 NY2d 596 [1990]; cf. Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 NY2d at 359; compare Clark v Cuomo, 66 NY2d at 190).
As defendant notes, "[t]he branches of government cannot always be neatly divided" (Matter of Dry Harbor Nursing Home v Zucker, 175 AD3d 770, 773 [3d Dept 2019] [internal quotation marks and citations omitted], lv dismissed & denied 35 NY3d 984 [2020]). However, this scheme does not present a slight overlap between branches not violative of separation of powers (compare Bourquin v Cuomo, 85 NY2d at 787). In any event, "[t]he erosion need not be great" as "[n]o single branch of government may assume [the] power [of another]" (Rapp v Carey, 44 NY2d at 167). And thus, while the Legislature may delegate many of those powers that it "may rightfully exercise itself" (Delgado v State of New York, 39 NY3d 242, 251 [2022] [internal quotation marks and citation omitted]), it may not usurp the power of the executive by placing upon itself that power conferred upon the executive to faithfully execute the laws.[FN2] The analogies defendant attempts to draw to other committees and commissions are unavailing.
Defendant's remaining contentions have been reviewed and found to be lacking in merit. Accordingly, Supreme Court properly denied defendant's motion for summary judgment, granted declaratory judgment in plaintiff's favor declaring unconstitutional Executive Law § 94 (10), (14) and all ancillary provisions and enjoined any action inconsistent with that finding.
Egan Jr., J.P., Clark, Reynolds [*5]Fitzgerald and McShan, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: While the qualifications of members of defendant are not set forth by statute, the IRC is required to "publish on its website a procedure by which it will review the qualifications of the nominated candidate and approve or deny each candidate" (Executive Law § 94 [3] [c]), which it has done (see Independent Review Committee for Nominations to the Commission on Ethics and Lobbying in Government, available at https://www.ny.gov/independent-review-committee-nominations-commission-ethics-and-lobbying-government [last accessed Apr. 9, 2024]). 

Footnote 2: Supreme Court did not improperly rely upon federal precedent. Rather, the court permissibly used this nonbinding precedent to guide its analysis (see generally Matter of Maron v Silver, 14 NY3d 230, 260-261 [2010]) and did not overlook that "the classic separation of powers between the executive and legislative branches is modified to some degree by our [state] Constitution" (Pataki v New York State Assembly, 4 NY3d 75, 83 [2004] [internal quotation marks omitted]).